Edwaed Goodell, J.
The primary issue in this case is whether a collecting bank is liable to the corporate payee of a check for its face amount under the following circumstances: The plaintiff is engaged in the trucking business. One of its trailers was stolen in January, 1966. A claim for the loss was made on its behalf to the insurer, the Holyoke Mutual Fire Insurance Company, by the plaintiff’s insurance broker, Frank Jayson, the third-party defendant in this action.
The plaintiff’s claim was settled for $1,750. On August 9, 1966 the insurance company issued its check for that amount, drawn on a Massachusetts bank, and payable to the order of the plaintiff and to the order of Universal C.I.T.
The check was not delivered to the plaintiff. Instead it was delivered to the third-party defendant, Frank Jayson, the plaintiff’s broker. Jayson appears to have secured the indorsement of the check to the order of the plaintiff by Universal C.I.T., one of the payees. Here it should be noted that Universal C.I.T. asserts no interest in or claim to the proceeds of the check and is not involved in this action.
After the indorsement of Universal C.I.T. was secured the third-party defendant wrote on the back of the check, beneath *33 the indorsement of Universal C.I.T., the indorsement of the plaintiff in blank. The form in which he wrote this indorsement was the corporate title followed by the name of the plaintiff’s president and his title as follows: “ Belmar Trucking Corp. Joseph Siciliano — Pres.”
Prior to these events the third-party defendant had established a checking account with the defendant, American Trust Company in the name of “ Curtis Creations ”, a trade name in which Jayson conducted business.
After he had indorsed the plaintiff’s name on the check he wrote beneath it the further indorsement “ For deposit — Curtis Creations ’ ’ and, as so indorsed, deposited the check in his account with the defendant bank. The bank accepted the deposit for collection and subsequently credited the face amount of the check, $1,750, to the third-party defendant’s account with it.
The plaintiff’s testimony is that the indorsement of its name was made by the third-party defendant without its knowledge or consent and that it only learned of the delivery of the check to the third-party defendant and of his indorsement of its name more than two years after the event. This knowledge came about as the result of its own inquiry following unsuccessful efforts to get information from the third-party defendant as to the disposition of its claim against the insurance company.
The plaintiff then instituted this action to recover $1,750 from the bank and the bank joined Jayson as a third-party defendant.
Frank Jayson was not present at the trial and did not testify. No explanation was offered for his absence.
Jayson was examined before trial and portions of his testimony were read into the record by the defendant. The essential purport of this testimony was that Jayson had written the name of the plaintiff’s president on the check at his direction. Such testimony is not the equivalent of testimony given at the trial where it would be subjected to the searching test of cross-examination.
As stated in Dowling v. Hastings (211 N. Y. 199, 202) “ Where one party to an action knowing the truth of a matter in controversy and having the evidence in his possession, omits to speak, every inference warranted by the evidence offered will be indulged in against him.” (See, also, Isquith v. Isquith, 229 App. Div. 555; Meyer v. Mayo, 196 App. Div. 78.)
It may be noted at this point in passing that even if Jayson’s testimony that he signed the name of the plaintiff’s president at his direction were to be accepted by the court as true, the defendant would still be obligated, for reasons hereafter stated, to make inquiry as to whether the plaintiff’s president was *34 authorized to participate in the transfer to a third person of a check payable to the plaintiff corporation.
On the basis of the record in this case I find that the indorsement by the third-party defendant of the check in the name of the plaintiff was made without its knowledge or consent and that it was unauthorized. In view of the record here I find that this was a forged indorsement.
The question then is whether the defendant bank is liable to the plaintiff by reason of its acceptance of the check for deposit and its subsequent credit of the proceeds of collection to the third-party defendant’s account.
Section 3-419 of the Uniform Commercial Code, entitled “ Conversion of Instrument; Innocent Representative ” provides, in part, in subdivision (1) that “ An instrument is converted when * * * (c) it is paid on a forged indorsement.” As stated in the Annotations to this section (McKinney’s Cons. Laws of N. Y., Book 62%, part 2, Uniform Commercial Code, p. 372 “ Subsection (1) (c) adopts the result in such cases as Henderson v. Lincoln Rochester Trust Co., 303 N. Y. 27,100 N. E. 2d 117 (1951), under which payment on a forged indorsement constitutes conversion of the instrument.”
In the Henderson case (supra, p. 33) the Court of Appeals stated its conclusion in this way: “To put it in other words, a collecting bank is merely an agent for the purpose of collecting from the drawee bank the proceeds of the check delivered to it. When it takes the check for collection, it assents to the agency and becomes bound by the terms of the instrument received. Those terms include an obligation to pay the proceeds collected to the true payee owner in the absence of a valid indorsement. The moment the collecting bank receives the proceeds it holds money belonging to the owner of the check and becomes a debtor of such owner and of no one else in the absence of a valid indorsement.”
Standing by itself, therefore, the provisions of section 3-419 (subd. [1], par. [c]) of the Uniform Commercial Code would require a determination of liability on the part of the bank.
However, subdivision (3) of section 3-419 of the Uniform Commercial Code which is new, is an exculpatory proviso, relieving a depository or collecting bank from liability in the event that it acts ‘ ‘ in good faith and in accordance with the reasonable commercial standards applicable to the business ’ ’ of the bank. It reads as follows: “ Subject to the provisions of this Act concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applic *35 able to the business of snch representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands.”
There is no evidence here that the bank did not act in good faith. The question is whether it acted in this instance in accordance with reasonable commercial standards applicable to its business.
Generally speaking, the proceeds of a check payable to a corporate payee constitute, of course, a corporate asset which may not be diverted to a noncorporate purpose. In the normal course of business such checks are deposited for collection in corporate bank accounts and the proceeds of their collection are available for the purpose of meeting corporate obligations.
The court takes judicial notice of the fact that it is not normal business practice for a corporate payee of checks to indorse them in blank and deliver them to third persons in the absence of an appropriate reason and pursuant to appropriate corporate authorization. Customarily, such reason and authorization are stated in the form of a corporate resolution. When duly certified and submitted to a collecting bank together with the check to which it relates the certified resolution serves as a reasonable warrant for the acceptance of the check for deposit.
While there is no testimony in this record as to banking practice in this respect, I am of the opinion that judicial notice can be taken of the fact that reasonable standards of banking practice require a collecting bank to make inquiry as to the reason and authority for the deposit to a third person’s account of a check indorsed by a corporate payee before accepting the check for deposit.
This view of the standard of reasonable commercial practice as applied to banks is confirmed by the cases and other relevant authority. (See Wagner Trading Co. v. Battery Park Nat. Bank, 228 N. Y. 37; Wen Kroy Realty Co. v. Public Nat. Bank & Trust Co., 260 N. Y. 84; Claflin v. Farmers & Citizens’ Bank of Long Is., 25 N. Y. 293; Rochester & Charlotte Turnpike Road Co. v. Paviour, 164 N. Y. 281; Standard Steam Specialty Co. v. Corn Exch. Bank, 220 N. Y. 478; Moch Co. v. Security Bank of N. Y., 176 App. Div. 842; Salsman v. National Community Bank of Rutherford, 102 N. J. Super. 482; Brady, Bank Checks [3d ed.], p. 515 et seq.; 2 Paton’s Digest, p. 1750; Ann. 100 ALR. 2d 670; 10 C. J. S., Bills and Notes, § 339, subd. b; 5 U C C Reporting Serv. 779.)
Indicative of both the applicable law and commercial practice is the opinion in Wagner Trading Co. v. Battery Park Nat. Bank *36 (supra). In that case the president of a corporation indorsed checks payable to it and deposited them in his personal account with the defendant, which collected the proceeds in the usual course of banking and paid them out on the personal checks of the president. In the course of its opinion, affirming a judgment in favor of the plaintiff against the collecting bank, the court on pages 41-42 made this statement: ‘1 When the defendant accepted the deposit of Wagner and became his banking agent, the defendant was in complete control of its relations with Wagner. It could, to safely protect itself in its dealings with Wagner, inquire as to his relations with the plaintiff, the authority he possessed, and could insist upon an examination of the plaintiff’s by-laws and minutes if it thought that necessary to protect itself. When it accepted the checks payable to the plaintiff and indorsed by Wagner as president of the plaintiff for deposit to the account of Wagner himself, it did so at its peril to ascertain whether Wagner had authority to indorse them and by his indorsement transfer the money to be paid thereon to his personal account. * * * If Wagner had ho such authority, title to the money in question never passed to the defendant and if it received it, it did so without authority and must account and make payment to the owner.”
The foregoing comment applies with greater force where the indorsement is forged.
That inquiry has long been established as the standard of commercial practice in these matters is indicated by another paragraph of the opinion in the Wagner Trading Co. case (supra, p. 43). Referring to the decision of the Court of Appeals in Claflin v. Farmers & Citizens Bank of Long Is. (25 N. Y. 293) involving a related situation, the court said in its summarization of the Claflin holding: ‘ ‘ There this court held, although the purchaser of the checks paid their full face for them and acted in good faith, that the plaintiffs could not recover and the president had no power to accept his own drafts or checks in behalf of the bank. It was a palpable excess of authority and any person taking the paper was bound to inquire as to the power of the agent so to contract. The court said: ‘ No business man of common intelligence could take these checks in good faith, and without suspicion or notice of this fraud. ’ ”
In Rochester & Charlotte Turnpike Road Co. v. Paviour (164 N. Y. 281, 286) where the fact situation, although different, was related, the court made this pertinent observation: 1 ‘ One who suspects, or ought to suspect, is bound to inquire, and the law presumes that he knows whatever proper inquiry would disclose. While the courts are careful to guard the interests of *37 commerce by protecting the negotiation of commercial paper, they are also careful to guard against fraud by defeating titles taken in bad faith, or with knowledge, actual or imputed, which amounts to bad faith, when regarded from a commercial standpoint.”
The Uniform Commercial Code has not changed the applicable commercial practice or the legal consequence where that practice is not observed.
The warranties referred to in sections 3-417 and 1 — 207 of the Uniform Commercial Code and the presumption stated in section 3-307 of the Uniform Commercial Code do not absolve a collecting bank, in my opinion, from the obligation of inquiry, in the stated fact situation. Subdivision (3) of section 3-419, as already noted, is new. The full measure of the collecting bank’s relief from responsibility under that subdivision is set forth in the language of that, subdivision as ‘1 good faith ’ ’ and dealing in accordance with applicable ‘ ‘ reasonable commercial standards.” As the Superior Court of New Jersey stated in Salsman v. National Community Bank of Rutherford (102 N. J. Super. 482, 489, supra) where it held that the 1 £ Defendant bank did not act in accordance with £ reasonable commercial standards ’ ”. ‘1 In the absence of defenses such as negligence, estoppel or ratification, the payee of a check is entitled to recover against a bank making collections from the drawee based upon a forged or unauthorized indorsement of a check. * * * This has been the established law throughout the country and continues to be the rule in states which have adopted the Uniform Commercial Code.”
Reasonable inquiry to ascertain ££ the real situation,” as stated in the Rochester ease (supra) continues to be the standard of commercial practice.
There is no testimony in this case to indicate or even suggest that the defendant bank in this instance made any inquiry of any kind whatsoever regarding either the reason or the authority for the indorsement of the check in the name of the plaintiff. This appears, on the contrary, to be one of those instances that may occur in the life of any banking institution in which there was an oversight in the observance of sound banking practice. While reasonable inquiry to ascertain the facts is the standard, it might be observed that in practical terms the defendant, as the collecting bank, should have requested and received a duly certified corporate resolution, stating reason and authority for the indorsement and delivery of the check in issue by the plaintiff to the third-party defendant. This case suggests that acknowledgment of the resolution is also desirable.
*38 Here I should note that I have not overlooked Gruntal v. United States Fid. & Guar. Co. (254 N. Y. 468). In my view, however, it is not apposite and does not constitute a precedent as to reasonable commercial practice in the fact situation involved in this case.
It should not be inferred from this discussion that it is intended as a generalization that in all circumstances the delivery of a corporate resolution concludes the need for further inquiry. There may be situations in which the form or substance of the resolution or the source or circumstances of its submission may suggest the desirability of further inquiry. Suffice it to say that in the instant case there was no inquiry. Reason and authorization for the deposit of the check for collection were not established by fact that the third-party defendant was one of the bank’s depositors. Reasonable commercial practice required, at the very least, in the process of inquiry, a request for and the receipt of an appropriate corporate resolution, duly certified. In the present fact situation it is not necessary to determine whether certification standing alone, had such a corporate .resolution been submitted, would have been adequate authentication or authorization.
Accordingly judgment is granted in favor of the plaintiff and against the American Trust Company for the sum of $1,750 together with interest thereon from August 18, 1966.
The defendant American Trust Company has a claim over against the third-party defendant Frank Jayson for the said sum of $1,750 and interest thereon. Accordingly judgment is granted in favor of the defendant American Trust Company and against the defendant Frank Jayson for the sum of $1,750 together with interest thereon from August 18, 1966.
Thirty-day stay of execution.