**LEIGH CO., A Limited Partnership, Plaintiff,**

v.

**The BANK OF NEW YORK, Corporation, Defendant.**

**No. 83 Civ. 1794–CSH.**

United States District Court, S.D. New York.

Feb. 21, 1985.

---

Bornstein & Cohen, Boston, Mass., for plaintiff; Elaine Fagelman, Boston, Mass., of counsel.

Emmet, Marvin & Martin, New York City, for defendant; Anne T. Schwab, New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

The above-captioned action is before this Court as part of a larger diversity action brought by plaintiff, Leigh Company ("Leigh Co."), a limited partnership based in Boston and formed under Massachusetts law, against several defendants in the United States District Court for the Central District of California. One of the named defendants in that action was the Bank of New York (the "Bank"), a New York corporation. Plaintiff's claims against the Bank were severed and transferred to this Court on March 9, 1983. The only claims before this Court are those asserted against the defendant Bank in Counts 10 and 11 of plaintiff's complaint.

The Bank moves, pursuant to Rule 12(b)(6), F.R.Civ.P., to dismiss Count 10 of the complaint, alleging a cause of action for money had and received or for conversion, for failure to state a claim upon which relief can be granted, and Count 11, alleging that the Bank committed what plaintiff calls a tort of "wrongful deposit." The Bank moves in the alternative for summary judgment on Count 10 alone, pursuant to F.R.Civ.P. 56.

The material facts in this dispute are taken from the complaint, and treated as true for purposes of the motion to dismiss, *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir.1977), or are uncontroverted facts contained in the parties' briefs and pleadings.

Plaintiff Leigh Co. is a Massachusetts limited partnership whose general partners are Jennifer Leighton and her father, Paul Leighton. On November 1, 1981, Leigh Co. contracted to purchase a feature film entitled "Super Seal" from Producers Clearing House ("PCH") pursuant to a Film Purchase Agreement. The deal was arranged by a third party, Robert Dziurgot, known to both PCH and Leigh Co. The terms of the Agreement provided that the total purchase price of the film would be $1,300,000, with $100,000 payable on execution of the Agreement, another $100,000 due on January 15, 1982, and the balance of $1,100,000 to be paid by promissory note.

Accordingly, on the date of the Agreement's execution, Leigh Co. delivered to PCH and other defendants, through Dziurgot, the promissory note described in the Agreement, and a check drawn on the State Street Bank & Trust Company of Boston, Massachusetts ("State Street Bank") in the amount of $100,000 dated

October 30, 1981, made payable to "Producers Clearing House."

Dziurgot brought the first $100,000 check to the Bank where he opened a partnership checking account on November 4, 1981 in the name of Producers Clearing House. Dziurgot filled out the Bank's standard form Partnership Account Agreement on which he represented himself to be a general partner of PCH and claimed to be the only partner authorized to sign checks on behalf of the partnership. Dziurgot also filled out a Partnership Authorization Agreement which authorized him to conduct banking transactions on behalf of the partnership. He then deposited the $100,000 check in the newly-opened account by indorsing it with the typewritten inscription:

> For Deposit Only
> Producers Clearing House
> A/C # 11–6874

Two days later, Dziurgot drew a $60,000 check payable to Leigh Co. on the PCH partnership checking account using blank temporary checks issued by the Bank. Since Dziurgot had previously arranged with Leigh Co. for a company named Aires Limited to purchase a limited partnership interest in Leigh Co., Jennifer Leighton accepted the check believing it to be Aires' payment in purchase of that interest. Leigh Co. deposited the $60,000 check and received the proceeds thereof.

Leigh Co. received the cancelled $100,000 check in its December 1981 monthly statement from the State Street Bank.

On or about January 15, 1982, Leigh Co. drew another check on the State Street Bank in the amount of $100,000, dated January 15, 1982 and payable to PCH. This check, intended by plaintiff to be the second payment required by the Film Purchase Agreement for purchase of "Super Seal," was also delivered to Dziurgot. He then deposited this second $100,000 check in the PCH account with the Bank after indorsing it with the typewritten inscription:

> For Deposit Only In
> Acct. of Producers Clearing House

11 6874

On or before January 31, 1982, Dziurgot withdrew all of the funds in the PCH partnership account and has not been heard from since. He is believed to have left the country after having been sentenced to a jail term on an unrelated criminal matter.

Leigh Co. contends that none of the $200,000 deposited in the PCH partnership account by Dziurgot was ever conveyed to the intended payee, Producers Clearing House, in partial payment toward purchase of the film "Super Seal." Leigh Co. further contends that Producers Clearing House denies authorizing Dziurgot to indorse on its behalf any checks drawn by Leigh Co. and payable to PCH.

### I. *Money Had and Received (Count 10)*

The question presented by defendant Bank's motion to dismiss is whether the Bank of New York, a depositary bank, can be held liable on an action for money had and received or for conversion by accepting for deposit, on the basis of Dziurgot's unauthorized indorsement, the two checks drawn by Leigh Co. and for giving Dziurgot the proceeds of those checks. In the leading New York case on the subject, *Underpinning & Foundation Constructors, Inc. v. Chase Manhattan Bank, N.A.*, 46 N.Y.2d 459, 414 N.Y.S.2d 298, 386 N.E.2d 1319 (1979), the Court of Appeals held that a drawer of a check may sue a depositary bank, either for money had and received or for conversion, if the bank accepts a check and pays out the proceeds in violation of a restrictive indorsement that is forged, yet effective. *Underpinning* controls this case only if Dziurgot's indorsement was both forged and effective and if the Bank did not handle the check in accordance with the restrictive indorsement.

The threshold question is whether Dziurgot's indorsement of the check is a "forged indorsement." In its complaint, plaintiff alleges that Dziurgot was a "duly authorized agent" of PCH (Complaint, para. 65) and contends that he had authority, express or implied, to open the PCH account with the

Bank, to deposit Leigh Co.'s checks therein and to withdraw funds from that account. If true, Dziurgot properly had authority to indorse plaintiff's checks and, *ipso facto*, his indorsements were not forged.

Realizing the implications of those pleadings for its claims against the Bank, plaintiff asserts a second theory in its papers in opposition to defendant's motion. Leigh Co. now contends that the true payee, PCH, never gave Dziurgot authority to indorse and negotiate on its behalf the checks from Leigh Co. Under this theory, Dziurgot's typewritten indorsement in PCH's name is a forgery since it was not executed by the intended payee, Producers Clearing House corporation, or one of its authorized agents, but only by one purporting to have authority to act in its behalf.

Ordinarily, a drawer of a check has no cause of action against a depositary bank for acceptance of and payment on a forged indorsement since that bank is deemed not to have dealt with any valuable property of the drawer. A forged indorsement is an "unauthorized signature" that is wholly inoperative to transfer the drawer's rights in the instrument. N.Y.U.C.C. § 3–404 (1964). It does not authorize the drawee bank to take money from the drawer's account to pay for the check. Consequently, when the depositary bank seeks to collect from the drawee bank the funds the depositary bank has paid out to its depositor, any funds given by the drawee bank to the depositary bank can only come from the drawee bank itself. Therefore, the depositary bank never has or receives any property of the drawer and has no property to convert. *Underpinning*, 414 N.Y.S.2d at 300, 386 N.E.2d at 1321.

But this rationale is inapplicable in those cases in which the indorsement is forged, yet effective. The indorsement then validly authorizes the drawee bank to withdraw funds from the drawer's account to cover the checks. The depositary bank thus has and receives the drawer's own money wrongfully and may be liable for converting the drawer's property. 414 N.Y.S.2d at 301, 386 N.E.2d at 1322.

The Uniform Commercial Code provides that a forged indorsement will be effective if:

"(a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or

"(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or

"(c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest."

N.Y.U.C.C. § 3–405.

In each of these circumstances, the Code views the drawer himself or herself as in the best position, among all innocent parties to the transaction, to prevent or detect the forger's deception; consequently, the risk of loss due to the forged indorsement is left on the drawer. In each case, it is the relationship between the drawer and the person responsible for the forgery that is critical.

■ The first situation contemplates those situations in which an impostor induces the drawer to issue the check to a specific payee. The particular payee designated is unimportant; all that is required is that the check be issued in reliance on an "impostor." The term "impostor" as used here refers to impersonation, and does not extend to a false representation that the party is the authorized agent of the payee. N.Y.U.C.C. § 3–405, official comment no. 2, (McKinney's 1964) at 256. In the case at bar, there is no allegation that Dziurgot pretended to be anyone but himself—Robert Dziurgot. He did not impersonate anyone else and cannot be an impostor. At most, plaintiff suggests it issued the checks to Dziurgot in reliance on his misrepresentation that he was an authorized agent for PCH, but it is clear from the official comment that this allegation is insufficient to bring Dziurgot's acts within the ambit of section 3–405(1)(a).

■ In the second situation, the drawer or his authorized signatory must have intended that the named payee have no interest in the check. But there is no question that Jennifer Leighton, who signed the checks at issue on behalf of Leigh Co., fully intended PCH, the named payee, to negotiate and receive the proceeds of the check. Dziurgot's forged indorsements cannot be deemed effective under section 3–405(b).

■ If the Bank is to be liable on the theory that the forged indorsement was effective, the facts of this case must fit the third situation described in N.Y.U.C.C. § 3–405(c): "an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest" (in the instrument). Leigh Co. may succeed on this theory only by showing that Dziurgot was its own agent or employee.

In various pleadings, plaintiff has alleged several different theories regarding Dziurgot's relationship to Leigh Co. In its complaint, plaintiff alleges that Dziurgot was PCH's agent. If that were true, whether he was PCH's agent for all purposes or only for limited purposes, the relationship between Leigh Co. and Dziurgot could not be such as to fall within the application of U.C.C. § 3–405(c).

In its first pleading in opposition to the Bank's motion to dismiss, plaintiff argues that Dziurgot was Leigh Co.'s agent for the limited purpose of accepting the checks for delivery to PCH and for delivery of the contract of purchase back to Leigh Co. However, Leigh Co. asserts that this limited agency relationship did not include authorization for Dziurgot to indorse or otherwise negotiate the checks.

Plaintiff argues that because the status of Dziurgot as an agent of Leigh Co. is unclear, determination of his status raises a disputed issue of material fact that should preclude granting defendant's motion. However, the agency issue would only be material if clarification of Dziurgot's status could produce facts sufficient to defeat defendant's motion. If Dziurgot were PCH's agent or an independent agent, his forged indorsement could not be effective under U.C.C. § 3–405, and hence plaintiff would have no cause of action against the depositary bank. On the other hand, if Dziurgot were plaintiff's agent, even for limited purposes, then Dziurgot's forged indorsement may be effective. However, plaintiff then has a cause of action against the Bank only if the Bank committed one of two errors: (1) dealt with the checks in violation of their restrictive indorsements, *Underpinning*, 414 N.Y.S.2d at 298, 386 N.E.2d at 1319; § 3–206(3), or (2) did not deal with the checks or their proceeds in accordance with reasonable commercial standards, N.Y.U.C.C. § 3–419(3). For the reasons stated below, I conclude that the Bank has committed neither of these errors. Therefore, no matter whose agent Dziurgot was, plaintiff can raise no material issue of fact sufficient to defeat defendant's motion for summary judgment.

■ Since presentation of a check for deposit in violation of a restrictive indorsement ought to put the depositary bank, as first taker, on notice of an irregularity, the bank is considered to be in a better position than the drawer to avoid the loss, even in those situations where the forged indorsement is effective. In such cases, the risk of loss is shifted from the drawer to the bank, and the bank may be held liable by the drawer for payment in violation of the restrictive indorsement.

Both of the checks at issue were payable to "Producers Clearing House" and indorsed "For Deposit Only" to the account of Producers Clearing House. The indorsements directed the Bank to deposit the check into the account of Producers Clearing House. The indorsement further identified the PCH account by number: 11–6874. The checking account bearing that number was the Producers Clearing House partnership account opened by Dziurgot. Pursuant to the restrictive indorsement, the Bank accepted the checks for deposit into that account and credited the proceeds of those checks to that account.

There was nothing on either the face of the check or in the indorsement to put the Bank on notice that the Producers Clearing House partnership, of which Dziurgot claimed to be general partner, was not the payee intended by plaintiff. Plaintiff intended to convey the check and its proceeds to a corporation bearing that name. If plaintiff had made the check payable to the "Producers Clearing House Corporation," the Bank would clearly have been remiss in permitting Dziurgot to open a partnership account in the firm's name or to negotiate the check without proper corporate authorization. But Dziurgot's representations were consistent with the drawer's designation of PCH as payee and the Bank cannot be said to have handled the checks in violation of their restrictive indorsements. The Bank, having followed the instructions contained in the restrictive indorsement, is not liable to the drawer either for conversion or for money had and received. *Spielman v. Manufacturers Hanover Trust*, 60 N.Y.2d 221, 469 N.Y.S.2d 69, 72, 456 N.E.2d 1192, 1195 (1983). *See also, Fed. Ins. Co. v. First Natl. Bank of Boston*, 633 F.2d 978 (1st Cir.1980).

Leigh Co. protests that even if the Bank did not violate the instructions contained on the face of the checks or in the restrictive indorsements, the Bank is nevertheless liable to plaintiff for failure to act "in accordance with reasonable commercial standards applicable to the business" in handling the checks. N.Y.U.C.C. § 3–419(3). Leigh Co. asserts that the determination whether the Bank acted in a commercially reasonable manner is a disputed issue of fact that precludes a grant of summary judgment.

■ It is true that the determination of commercial reasonableness is usually a factual determination best made by the trier of fact, *Holland America Cruises, N.V. v. Carver Federal Sav. & Loan Ass'n*, 60 A.D.2d 545, 400 N.Y.S.2d 64, 65 (1977). But where the material facts are undisputed, the Court may decide as a matter of law that the Bank's actions were commercially reasonable. *See, e.g., Belmar Trucking Corp. v. American Trust Co.*, 65 Misc.2d 31, 316 N.Y.S.2d 247 (1970); *Williams Mechanical Corp. v. Manufacturers Hanover Trust Co.*, 20 U.C.C.Rep.Serv. (Callaghan) 468 (N.Y.Sup.Ct.1976). Furthermore, the burden is on Leigh Co. to present evidence demonstrating what constitutes a commercially reasonable standard for a bank to follow when its customers present checks for deposit and how the Bank failed to meet this standard. *Tette v. Marine Midland Bank*, 78 A.D.2d 383, 435 N.Y.S.2d 413, 415 (4th Dept.1981).

Leigh Co. alleges three ways in which the Bank's handling of the checks at issue was commercially unreasonable.

■ First, plaintiff asserts that the Bank was negligent in giving Dziurgot blank checks when he opened the account for use in drawing funds. Plaintiff suggests that if the check drawn by Dziurgot on the partnership account payable to Leigh Co. had had the partnership name imprinted upon it, Jennifer Leighton would not have assumed that the check was from Aires Limited and would have been alerted to Dziurgot's chicanery. While receipt of the check from a PCH account instead of an Aires Limited account might well have led Leighton to make further inquiries of Dziurgot at an earlier date,[1] it cannot be said that the giving of blank checks to an account holder while imprinted checks are being prepared is negligent or commercially unreasonable. I take judicial notice that

---

**1.** In its defense, the Bank claims that Leigh Co. was negligent in failing to use due care in examining its bank statement and returned checks which would have put plaintiff on notice of Dziurgot's activities. *Underpinning*, 414 N.Y. S.2d at 302, 386 N.E.2d at 1323; *Fed. Insurance Co. v. Groveland State Bank*, 37 N.Y.2d 252, 372 N.Y.S.2d 18, 21–22, 333 N.E.2d 334, 337–338 (1975). Defendant suggests that such negligence would preclude recovery by plaintiff for the Bank's negligence. In *Underpinning*, the New York Court of Appeals left undetermined the question whether in those situations in which both the drawer and the depositary bank may be said to have acted negligently, the Bank's own negligence may preclude such a defense. 414 N.Y.S.2d at 302. I need not reach the issue either in view of my holding that under any theory advanced by plaintiff, the Bank was not negligent.

it is common practice for banks to provide temporary checks with only an account number imprinted upon them when an account is first opened, so that the account holder may have access to funds while the checks are being printed. Such a practice seems wholly pragmatic and reasonable, and plaintiff offers no authority or evidence to show that other depositary banks avoid giving new commercial account holders blank temporary checks. No trial is warranted on this issue.

■ Second, Leigh Co. claims that it was commercially unreasonable for the Bank to permit Dziurgot, as general partner, to indorse and deposit the checks merely in the name of the partnership, PCH. Despite the fact that the only named payee was PCH, plaintiff claims Dziurgot's individual co-indorsement should have been required. Yet plaintiff proffers no evidence showing that the standard of commercial reasonableness within the banking industry requires co-indorsement by an individual partner of a negotiable instrument payable to a partnership and indorsed thereby. Under New York law, a general partner has apparent authority to bind all other partners by signing an instrument solely in the partnership name. *Chemical Bank of Rochester v. Haskell*, 51 N.Y.2d 85, 432 N.Y.S.2d 478, 480, 411 N.E.2d 1339, 1341 (1980); *Meriden Natl. Bank v. Gallaudet*, 120 N.Y. 298, 24 N.E. 994 (1890). I find no authority (and plaintiff cites none) requiring indorsement both in the partnership name and by a general partner. As a matter of law, the Bank's failure to require Dziurgot's individual indorsement cannot be deemed commercially unreasonable.

■ Leigh Co. argues in the alternative that at a minimum, Dziurgot should have been required to furnish documentary authorization from the partnership permitting him to indorse checks. In support of this argument, plaintiff cites *Belmar Trucking Corp. v. American Trust Co.*, 65 Misc.2d 31, 316 N.Y.S.2d 247 (Civil Ct.N.Y. County

1970), in which it was held that where a check payable to a corporate payee was indorsed in blank by the corporation's name and that of its president, and further indorsed to a third party, reasonable commercial practice required the depositary bank to request a certified corporate resolution stating the reason and authority for the indorsement and delivery of the check to the third party. *Belmar* is inapplicable to the instant action for two reasons: (1) the checks here were indorsed for deposit only to the account of the named partnership payee and not to a third party, and (2) the payee here was a partnership, not a corporation, and for the reasons stated above, Dziurgot as general partner had apparent authority to indorse the checks on behalf of the partnership.

■ Third, Leigh Co. claims that the Bank did not fulfill its own requirements for establishment of a partnership checking account. In particular, plaintiff notes that neither a Certificate of Limited Partnership nor a list of partners is appended to the Partnership Authorization Agreement as required by paragraph one of that Agreement. Plaintiff argues that although the Bank may accept deposits on such terms as it may prescribe, N.Y. Banking Law § 96(1) (McKinney's 1971), once it has established those terms and procedures, it may be negligent if it then fails to act in accordance with its own requirements.

Dziurgot did not represent the partnership to be a limited one; therefore, there was no negligence in failing to require Dziurgot to produce a Certificate of Limited Partnership. Dziurgot did represent himself to be the only general partner authorized to act on behalf of the partnership; consequently, requiring Dziurgot to produce a list of unauthorized general partners would have served no valid purpose. Under these circumstances, the Bank's omissions cannot be said to be commercially unreasonable.[2]

---

**2.** The Bank also contends that even though it had no duty to investigate the *bona fides* of Dziurgot's alleged partnership, there was abso-

lutely no reason for the Bank to be suspicious of Dziurgot since he had a longstanding relationship with the Bank and was considered to be a

Although I hold as a matter of law that the Bank's actions in handling plaintiff's checks were not commercially unreasonable, I note that in any event N.Y.U.C.C. § 3–419(3) limits the Bank's liability for conversion of plaintiff's money, in the event that it had failed to handle the checks in a commercially reasonable manner, to the amount of the proceeds remaining in the Bank's hands. Since Dziurgot withdrew the entire proceeds from the checking account, plaintiff is barred by this defense from asserting any liability on the Bank's part for acting in a commercially unreasonable manner. *Coulter Electronics, Inc. v. Commercial Bank of Cobb County,* 727 F.2d 1078, 1079 n. 3 (11th Cir.1984).

Defendant's motion for summary judgment in its favor on Count 10 is granted.

## II. *Wrongful Deposit (Count 11)*

Plaintiff also alleges a cause of action against the Bank for a tort it terms "wrongful deposit and payment of checks." The gravamen of this claim, according to the facts alleged in its support, is that the Bank handled plaintiff's checks in a manner inconsistent with their terms. In response to the Bank's challenge that no such cause of action is recognized under New York law, Leigh Co. states that the theory of recovery intended by that claim is one for "gross negligence." Leigh Co. claims *Underpinning* established a separate cause of action in negligence by a drawer against a depositary bank. Plaintiff's argument is meritless. At the very outset of its opinion, the *Underpinning* court stated:

"We are called upon to determine when, if ever, the drawer of a check may sue a depositary bank which accepts the check and pays out the proceeds in violation of a forged restrictive indorsement. We conclude that in such a circumstance the drawer may have a cause of action against the depositary bank, based on either money had and received or conver-

sion, at least in those cases in which the indorsement, albeit forged, is nonetheless 'effective.'"

No separate common law negligence tort against the depositary bank was recognized in *Underpinning.*

It is clear that any negligent failure by the Bank to handle the checks in accordance with their terms is subsumed in an action for money had and received or for conversion.

Leigh Co.'s loss resulted directly from Dziurgot's criminal actions. There is no evidence that the Bank had any knowledge of his designs, and it would be unfair to impose on banks a responsibility for preventing such economic crimes. This comports with the common law maxim that generally, "no duty lies to use reasonable care to forestall the consequences of criminal conduct." *Katz v. Friendly Frost, Inc.,* 33 Misc.2d 220, 226 N.Y.S.2d 655, 658 (Sup.Ct.1962), quoting *Campbell v. Cunningham Natural Gas Corp.,* 164 Misc. 1, 298 N.Y.S. 200, 205 (1937). Count 11 of plaintiff's complaint is dismissed for failure to state a claim upon which relief can be granted.

The Clerk of the Court is directed to dismiss the complaint as against defendant, The Bank of New York, with prejudice and without costs.

It is SO ORDERED.

good customer. Such a relationship will not protect a bank from liability for negligent failure to make inquiries required by reasonable commercial practice, *Belmar, supra,* 316 N.Y.

S.2d at 254; and if a breach of such practice otherwise appeared, the Bank could not escape liability on that ground. But no such breach is demonstrated.