E. Lavonne KELLY d/b/a Palmer & Roy Co.; Alice G. Sinclair; John W. Van Der Peol d/b/a Baker & White Co.; Dr. Michael B. Miller d/b/a Brady & Ellsworth Co.; Randy R. Bourne d/b/a Conlan & Slater Co.; Karleen Sabey d/b/a Cox & William Co.; J.B. Kelly d/b/a Engall & Hains Co.; Florence Adams d/b/a Fisher & Parcell Co.; Charlene G. Salmon d/b/a Gage & Walters Co.; Brian Ogden d/b/a Hogan & Lawson Co.; Dr. Pearce Louisy d/b/a Hoke & Benson Co.; Lina A. Bartholomeusz; Barbara Clement; Donald Francis d/b/a Isaac & Baker Co.; Eleanor Peters d/b/a Whipple & Cornell Co.; Bryce Hall d/b/a Jensen & Lewis Co.; Vicki Roach d/b/a Kern & Harper Co.; H.P. Eveson d/b/a Kelly & Lamb Co.; Wanda Seyferth d/b/a Jacob & McKerby Co.; Graham Kelly d/b/a King & Ray Co.; Ville Rasmussen Davies d/b/a May Field & Preston Co.; Cheryl Kelly d/b/a Nelson & Taylor Co.; Michael Ying d/b/a Roger & Jess Co.; Carolyn Rizzo d/b/a Shaw & Burns Co.; Marguerite Graham d/b/a Simpson & Carter Co.; Alma Evans d/b/a Waller & Reynolds Co.; Myrle Peters d/b/a Isaac & Meyers Co.; Leo W. Knell d/b/a Nelson & Camp Co. and Ebert & Gates Co.; Mabel Fuqua, Leslie Henry and Ron Hager d/b/a Greenwood & Nash Co.; Merle L. Hardee d/b/a Anderson & Scott Co., Lane & Slater, Co. and Curtis & Frame Co.; Victoria Douglas; Doug Newell; Claire E. Nash; Ida Horne; William C. Horne; Fred Hanefeld; James R. Debleyker and Unknown Individuals, John Does 1 through 1700, Plaintiffs–Appellants,

v.

**CENTRAL BANK AND TRUST COMPANY OF DENVER,**
Defendant–Appellee.

No. 88CA0122.

Colorado Court of Appeals,
Div. II.

Dec. 14, 1989.

As Modified on Denial of Rehearing
Feb. 1, 1990.

Certiorari Denied July 16, 1990.

Moyer, Beal & Vranesic, H. Earl Moyer, Lakewood, Arthur M. Schwartz, P.C., Arthur M. Schwartz, Bradley J. Reich and Michael W. Gross, Denver, and Pryor, Carney & Johnson, P.C., Rodney R. Patula and Elaine A. Menter, Englewood, for plaintiffs-appellants.

Thomas J. Bissell and John E. Bush and Gorsuch, Kirgis, Campbell, Walker & Grover, James H. Turner, Denver, for defendant-appellee.

Opinion by Judge TURSI

Plaintiffs, a certified class of several hundred investors, appeal the summary judgment entered in favor of defendant, Central Bank and Trust Company of Denver, on their claims alleging (1) payment of checks with unauthorized indorsements and (2) aiding and abetting a scheme to defraud. We affirm in part and reverse in part.

In 1981, plaintiffs chose to invest in a Cayman Islands entity, Tradecom, Ltd., a business involved in precious metals arbitrage. Their investments, in the form of cashier's checks, were payable to the order of Tradecom and delivered to Arvey Drown, Tradecom's purported agent. Drown indorsed these checks and deposited them at Central Bank into a checking account.

Most of the 934 checks worth $11,227,473 were indorsed:

"Tradecom Limited
For deposit only
 072 575"

Other checks, totalling $576,850, were indorsed:

"For deposit only
072 575"

This included one check, for $57,000, which apparently was deposited without indorsement and was indorsed by Central Bank's officer:

"For deposit only
072 575
Tradecom by
Mark E. Thomson
Commercial Loan officer"

The referenced account, # 072 575, was not that of Tradecom (which had no accounts at Central Bank), but rather was that of Equity Trading Corporation, a company owned and managed by Drown, also purportedly an agent of Tradecom.

Plaintiffs subsequently lost most of their investments in Tradecom, and they sued Central Bank for negligence, conversion, money had and received, breach of warranties, and aiding and abetting a scheme to defraud. They alleged that neither Drown nor Equity Trading was an agent of Tradecom and the check indorsements by Drown were unauthorized and ineffective; that, over the course of 13 months, the Bank negligently or recklessly permitted Drown improperly to divert the checks, payable to Tradecom, into Equity Trading's checking account; and that Central Bank did not follow reasonable commercial standards. Central Bank answered plaintiffs' complaint, and both parties moved for summary judgment.

On December 18, 1987, the trial court ordered summary judgment for Central Bank on all of plaintiffs' claims. Its order was essentially composed of three separate rulings: First, it ruled that plaintiffs had failed to proffer any significant evidence of an absence of actual authority for Drown to indorse and deposit Tradecom checks into Equity Trading's account and concluded, accordingly, that plaintiffs could not prevail on their first four claims and summary judgment for defendant was appropriate. Second, it ruled against plaintiffs in their cross-motion for summary judg-

ment on the checks totalling $576,850 bearing no indorsements. And third, it granted summary judgment for Central Bank on plaintiffs' aiding and abetting claims because plaintiffs' evidence was fragmentary and factually inadequate to afford any association between the Bank's action (or inaction) and any loss suffered by the plaintiffs. Plaintiffs appeal all of these rulings.

### I.

Plaintiffs first argue that summary judgment was inappropriate for Central Bank on their first four claims because the Bank did not meet its burden of establishing the absence of any genuine issue of material fact. We agree in part and disagree in part.

 In a motion for summary judgment, the movant bears the burden of establishing the nonexistence of a genuine issue as to any material fact. This burden has two distinct components: an initial burden of production, which when satisfied shifts to the non-movant, and an ultimate burden of persuasion, which always remains on the movant. *See Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708 (Colo.1987).

In this case, the parties dispute what Central Bank's initial burden of production should be. While we recognize this issue is uncertain and not clearly established by the Uniform Commercial Code, *see* H. Bailey, *Brady on Bank Checks* § 25.23 (6th ed. 1987), we need not address it in this appeal since our review of the record indicates that, under any circumstances, Central Bank adequately bore its initial burden of production.

 In moving for summary judgment, Central Bank asserted that it was entitled to judgment because: (1) its evidence established that Drown was in fact an agent of Tradecom authorized to indorse and deposit Tradecom checks at Central Bank; and (2) there was no evidence in the record to indicate that the indorsements were not genuine or authorized, the necessary element of plaintiffs' claims. In support of these assertions, it offered the affidavit of

Drown as well as executed powers of attorney making Drown the agent for Tradecom.

In relevant part, the powers of attorney appoint Drown as Tradecom's attorney in the United States and expressly authorize him to:

"execute and do any and all of the acts and things following with full rights of substitution:

1. To transact manage carry on and do all and every business matter and things requisite and necessary or in any matter connected with or having reference to the business and affairs of the Company in any part of the world....

2. To invest any money received of the Company in such manner and upon such securities as the Attorney [Drown] shall think fit *or to deposit the same or any part thereof with any banker* ... and ... withdraw any such money and apply the same to any of the purposes herein mentioned.

. . . .

8. To ... *endorse on behalf of the Company any cheques drafts or other negotiable instruments* which the Attorney may deem necessary or proper in relation to the Company affairs." (emphasis added)

Since such a power of attorney is a recognized means of appointing a general agent with actual authority to act for the principal, *see Independence Indemnity Co. v. International Trust Co.,* 96 Colo. 92, 39 P.2d 780 (1934), and since a signature or indorsement is not "unauthorized" if made with actual authority, *see* § 4–1–201(43), C.R.S., we conclude that as a matter of law this showing by Central Bank satisfied its initial burden of production and the burden appropriately shifted to plaintiffs.

To meet their burden, plaintiffs were required to muster sufficient evidence to make out a triable issue of fact, otherwise summary judgment for the Central Bank

was appropriate. *Continental Air Lines, Inc., v. Keenan, supra.*

Plaintiffs contend they satisfied their respective burden by identifying direct and circumstantial evidence from which a jury could find that Drown was not an agent and was not authorized to indorse and deposit Tradecom checks into Equity Trading's account. In this regard, they assert: (1) that the existence of an agency agreement is a question of fact for the jury; (2) that Drown's testimony regarding agency and authority can be discredited; and (3) that the two powers of attorney can be discredited because one was executed by non-officers of Tradecom in 1984 (after the Equity Trading account at Central Bank had been closed) and because one was executed on April 23, 1981 (which was 17 days after the Equity Trading account was opened at Central Bank).

■ Although plaintiffs' first assertion is generally correct, it is not absolutely so. If the evidence as to the agent's authority is undisputed, or different reasonable and logical inferences may not be drawn therefrom, the question as to the existence of the agency relationship is one of law which should be determined by the trial court. *See Stortroen v. Beneficial Finance Co,* 736 P.2d 391 (Colo.1987); *Cheney v. Hailey,* 686 P.2d 808 (Colo.App.1984).

In this case, the questions of agency and authority were ones of law for the trial court. Nothing plaintiffs assert shows that the April 23, 1981, power of attorney was not effective during and throughout the period of Drowns' indorsements and deposits of checks to Equity Trading's checking account. Drown's agency and authority were basically undisputed, and no reasonable and logical inferences to the contrary can be drawn.

■ Plaintiffs' attempt to discredit the Bank's affirmative evidence of agency and authority without offering any concrete evidence from which a reasonable juror could return a verdict in their favor. However, even if we assume that plaintiffs might discredit some of defendant's testimony, absent any significant probative evidence to defeat a properly supported motion for summary judgment, discrediting testimony is normally not sufficient to defeat the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bose v. Consumers Union of United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

### A.

Because there was no triable issue of fact concerning Drown's agency and authority to indorse and deposit the cashier's checks, and because proof of a forged or unauthorized indorsement is a necessary predicate to Central Bank's liability, plaintiffs could not prevail as to the 11 million dollars of checks that contained an indorsement which included the "Tradecom Limited" name. *See* §§ 4–1–201(43), 4–3–403(1), 4–3–401(2), 4–3–206(3), 4–3–419(1)(c), C.R.S.; *In re Flight Transportation Corp. Securities,* 825 F.2d 1249 (8th Cir.1987), *cert. denied,* 485 U.S. 936, 108 S.Ct. 1113, 99 L.Ed.2d 273 (1988); *Grosberg v. Michigan National Bank–Oakland,* 420 Mich. 707, 362 N.W–2d 715 (1984); *Leigh Co. v. Bank of New York,* 617 F.Supp. 147 (D.C. N.Y.1985); *Parton v. Robinson,* 574 S.W.2d 679 (Ky.App.1978).

Consequently, with respect to these checks indorsed with Tradecom's name, we conclude that the trial court properly granted summary judgment for Central Bank on plaintiffs' first four claims.

### B.

■ The trial court erred, however, in granting Central Bank summary judgment on the $57,000 check indorsed by Central Bank's commercial loan officer.

In order for Central Bank to have become a holder under this indorsement, and thus have obtained title, Central Bank would have had to have been authorized to provide Tradecom's indorsement under § 4–4–205(1), C.R.S. This, however, was impossible since Tradecom was not Central Bank's "customer." *See In re Sun Belt Electrical Constructors, Inc.* 64 B.R. 377 (Bankr.N.D.Ga.1986) (Bank not authorized to supply non-depositor third party payee's

indorsement); *Mid–Atlantic Tennis Courts, Inc. v. Citizens Bank & Trust Co.,* 658 F.Supp 140 (D.Md.1987). Consequently, this indorsement is unauthorized as a matter of law, and summary judgment should not have been ordered for Central Bank on this check.

### C.

Plaintiffs also contend that the trial court erred in granting summary judgment for Central Bank on the remaining $519,-850 of cashier's checks lacking any signature and merely indorsed "For deposit only 072 575." We agree.

■ Under § 4–3–419(1)(c), C.R.S., a check is converted when it is paid on a forged indorsement. In this context, a collecting or depository bank "pays" a check when it credits its customer's account with the proceeds of a check collected from the drawee bank. *See Central, Inc. v. Cache National Bank,* 748 P.2d 351 (Colo.App. 1987). If such payment occurs on a check with no indorsement or a missing indorsement, it is the legal equivalent of payment on a forged indorsement. *See Denver Electric & Neon Service Corp. v. Gerald H. Phipps, Inc.,* 143 Colo. 530, 354 P.2d 618 (1960) (Pre–UCC law); *Chilson v. Capital Bank,* 237 Kan. 442, 701 P.2d 903 (1985); *Humberto Decorators, Inc. v. Plaza National Bank,* 180 N.J.Super. 170, 434 A.2d 618 (1981).

■ The term "indorsement" is generally understood to mean the indorser's writing of his or her signature on the instrument or the affixing of the indorser's name or some designation identifying the indorser on the instrument. *La Junta State Bank v. Travis,* 727 P.2d 48 (Colo.1986). A check simply inscribed "For deposit only" to an account other than payee's account and without the payee's signature is not an effective "indorsement." *See Central, Inc. v. Cache National Bank, supra; Mid–Atlantic Tennis Courts, Inc. v. Citizens Bank & Trust Co., supra; Citizens Bank v. Thornton,* 172 Ga.App. 490, 323 S.E.2d 688 (1984).

■ If the instrument is order paper and the depository bank does not, or cannot, supply the missing indorsement of its customer, the absence of an indorsement can be fatal to negotiation and transfer of title. *See* §§ 4–3–110(1), 4–3–202(1), 4–3–201(3), and 4–4–205(1), C.R.S.; *Mid–Atlantic Tennis Courts, Inc. v. Citizens Bank & Trust Co., supra.* One such situation is when the depository bank's customer and the payee are not the same person. In this case, the depository bank is unauthorized to, and cannot, supply the missing indorsement of the payee since the payee is not the bank's "customer" under § 4–4–205. *See Mid–Atlantic Tennis Courts, Inc. v. Citizens Bank & Trust Company, supra; In re Sun Belt Electrical Constructors, Inc., supra.* In this situation, the depository bank does not become a holder of the checks and does not obtain good title to them. *See* §§ 4–1–201(20), 4–3–201(3) and Comment 8, and 4–3–307(2) and Comment 2, C.R.S. Payment of such check proceeds to its depositor subjects the depository bank to liability for conversion. *See* § 4–3–419(1)(c), C.R.S.; *Mid–Atlantic Tennis Courts, Inc. v. Citizens Bank & Trust Co., supra.*

■ In this case, it was undisputed that Drown, or someone in his employ, deposited $519,850 worth of cashier's checks at Central Bank bearing the simple inscription "For deposit only 072 575." These checks, which bore no signature indorsement of the payee, Tradecom, or anyone else, were paid and credited to account 072 575. This was not an account of Tradecom, which was not a customer of Central Bank. Under these circumstances, Central Bank was not a holder of these checks by negotiation. It obtained no title to these checks. It is, consequently, subject to conversion liability under § 4–3–419(1)(c) for making payment on the equivalent of a forged indorsement.

Central Bank argues that it should not be liable to plaintiffs for conversion since (1) the inscription "For deposit only 072 575" constitutes a restrictive indorsement with which its employees complied, and since (2) Drown was Tradecom's agent, au-

thorized to indorse and deposit these cashier's checks. We reject these arguments.

■ Central Bank's first argument misconstrues § 4-3-205, C.R.S. This section, and § 4-3-204, C.R.S., characterize various types of indorsements. Section 4-3-205 describes restrictive indorsements. It, however, does not declare that the words of restriction, "for deposit," constitute an "indorsement." Instead, the words "for deposit" or "for deposit only" are alone but a written direction which are inadequate, without a signature, to negotiate an instrument and transfer title of order paper. *See* §§ 4-3-201, 4-3-202, and 4-3-401, C.R.S.; *Central, Inc. v. Cache National Bank, supra.*

■ Central Bank's second argument also fails. Negotiation of order paper requires the authorized indorsement of the named payee. *See* § 4-3-202, C.R.S. The question of whether the payee's indorsement is authorized, however, does not arise unless there is an indorsement in the first place. The checks here bore no "indorsement" and were, thus, never negotiated to Central Bank. This is so regardless of whether Drown was authorized or not. Consequently, we conclude that it is immaterial whether Drown had authority to negotiate checks on behalf of Tradecom. The checks simply were not negotiated, and payment of these checks subjected Central Bank to conversion liability. *See Mid-Atlantic Tennis Courts, Inc. v. Citizens Bank & Trust Co., supra.*

## II.

Based upon the principles set forth in sections B and C above, plaintiffs argue that the trial court erred in denying their cross motion for summary judgment on these $576,850 of cashier's checks. We agree.

Plaintiffs' entitlement to summary judgment at this time depends only on whether Central Bank is entitled to prove the affirmative defense recognized in § 4-3-419(3). This section provides:

"Subject to the provisions of this title concerning restrictive indorsements a ... depositary ... bank ... who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such [depositary bank] dealt with an instrument or its proceeds on behalf of one who was not the true owner, is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands."

Although, as we ruled above, the vast majority of the Tradecom checks were properly indorsed, deposited, and paid at Central Bank, we conclude that Central Bank did not, as a matter of law, act in accordance with reasonable commercial standards in handling the $576,850 of checks deposited without Tradecom's signature. *See Mid–Atlantic Tennis Courts, Inc. v. Citizens Bank & Trust Co., supra.* Therefore, we conclude the defense in § 4-3-419(3) is not available to Central Bank. Consequently, there is no genuine issue of material fact precluding plaintiffs from entry of summary judgment against Central Bank on their conversion claims for $576,850.

## III.

■ Plaintiffs' last argument concerns the entire amount of their investments. They contend the trial court erred in granting Central Bank summary judgment on their claims alleging the Bank recklessly gave substantial assistance to Drown in his scheme to defraud. We agree.

In this case, plaintiffs sought recovery under § 11-51-125(5)(b), C.R.S. (1987 Repl. Vol. 4B). This statute, which allows a private cause of action, provides:

"Any person who, recklessly ... gives substantial assistance to a person who is liable under subsection (2) or (3) of this section [concerning fraud in the sale of securities] shall be jointly and severally liable to the same extent as such person."

Summary judgment is a drastic remedy and should be granted only if the movant shows that there is no genuine issue as to any material fact and that he is entitled to

judgment as a matter of law. *See* C.R.C.P. 56(c); *Closed Basin Landowners Ass'n v. Rio Grande Water Conservation District*, 734 P.2d 627 (Colo.1987). The absence of dispute as to all issues of material fact must be clearly shown. All favorable inferences should be drawn in favor of the nonmovant and any doubts should be resolved against the movant. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo. 1988); *KN Energy, Inc. v. Great Western Sugar Co.*, 698 P.2d 769 (Colo.1985), *cert. denied*, 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985).

In this case, the trial court granted summary judgment and thereby implicitly determined there was no genuine dispute that the elements of recklessness and substantial assistance required by § 11–51–125 were absent. Its order states that the facts "[c]ollectively ... [were] inadequate to afford any association between the bank's action (or inaction) and any loss suffered by the plaintiffs." Our review of the record, however, indicates there were sufficient facts, doubts, and inferences, to preclude summary judgment.

In the normal course of business, it is unusual for a corporate payee of checks to endorse them in blank and deliver them to third persons in the absence of an appropriate reason and pursuant to appropriate corporate authorization. Customarily, such reason and authorization are stated in the form of a corporate resolution which is submitted to the bank. *See Belmar Trucking Corp. v. American Trust Co.*, 65 Misc.2d 31, 316 N.Y.S.2d 247, 8 UCC Rep. Serv. 73 (N.Y.Civ.Ct.1970). Central Bank concedes as much.

When faced with this atypical situation, reasonable standards of banking practice require a depository bank to make inquiry as to the reason and authority for the deposit to a third person's account of a check endorsed by a corporate payee before accepting the check for deposit. *See Belmar Trucking Corp. v. American Trust Co.*, *supra*.

Central Bank's own internal policy for accepting business deposits seemed to require as much. Tellers are instructed to examine appropriate resolutions on file to see if other account names may be on the account. Such inquiry, however, did not happen here since uncontradicted evidence indicates that Central Bank did not have any Tradecom resolutions or authorizations in its files.

Other uncontradicted evidence indicates that a Central Bank officer met with Drown on at least one occasion and instructed him on the method to be utilized in indorsing the checks, and this officer, without authority, indorsed one of the checks for Tradecom for deposit in Equity's account.

In light of these facts, the large number of checks, the large dollar amounts, and the fact that Central Bank's officers do not recall ever seeing a power of attorney or other authorization making Drown the agent of Tradecom, we conclude that a reasonable inference could be drawn that Central Bank's handling of deposits recklessly gave substantial assistance to Drown in his purported scheme to defraud. Consequently, the trial court's granting of summary judgment was improper and may not stand. *Cf. Wright v. Schock*, 571 F.Supp. 642 (N.D.Cal.1983) (holding that supplying "normal banking services" to a party is not "aiding and abetting" under the securities laws).

The judgment is affirmed insofar as plaintiffs failed to meet their burden of showing evidence that the checks indorsed by Drown with Tradecom's name were unauthorized. The judgment is otherwise reversed, and the cause is remanded with directions that the court enter judgment for plaintiffs on their conversion claims concerning the $576,850 worth of checks not endorsed with Tradecom's name and to hold further proceedings on the remaining issues.

SMITH and FISCHBACH, JJ., concur.

## ON PETITION FOR REHEARING

On petition for rehearing, Central Bank raises for the first time the issue of whether plaintiffs, as the purchasers of cashier's checks, are proper parties to bring an ac-

tion against it, the depository bank, for conversion under § 4–3–419(1)(c). Since this issue was not raised by the parties in their briefs, nor at oral argument, we consider it not properly before us and, therefore, do not decide it herein. *See* C.A.R. 1(d). *See also Isham v. Miller*, 80 Colo. 380, 252 P. 353 (1927).