No. 18,846.

James Albert Gonzales *v.* Honorable Neil P. Horan, Judge, etc.
(332 P. [2d] 205)

Decided November 24, 1958.

Mr. RALPH M. CLARK, for petitioner.

Mr. BERT M. KEATING, District Attorney, Mr. GREGORY A. MUELLER, Chief Deputy, Mr. MELVIN ROSSMAN, Deputy, Second Judicial District, for respondents.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

PETITIONER Gonzales filed this original proceeding in this court for a Writ in the nature of Prohibition and pursuant thereto, a rule to show cause was issued directed to respondent District Court and two of the judges thereof. From the record before us it appears that Gonzales was charged with robbery under the Colo-

rado statute, furnished bond and then fled the jurisdiction. The bond later was forfeited. Thereafter he was charged with a federal crime (Dyer Act), arrested, bonded, and again fled the jurisdiction. Then he was charged with the federal crime of failing to surrender and was arrested, returned to Colorado, found guilty and sentenced to a term in a federal prison.

Gonzales alleges that upon his return to Colorado by the federal officials, and without authority of office or order of court and before his federal conviction, he was turned over to the Colorado authorities under the pending robbery information; that on March 3, 1958, following such wrongful detention the Denver District Court issued an *alias capias* directed to the Manager of Safety of Denver who is its ex-officio sheriff. The latter was then holding Gonzales in custody. The case was set for trial and counsel appointed for Gonzales.

After a series of motions filed in the United States District Court for Colorado, Gonzales was on or about July 19, 1958, successful in ousting the State of Colorado from jurisdiction and in reinstating the federal jurisdiction.

Thereafter the Denver district attorney on his own *ex parte* motion successfully petitioned Judge Martin P. Miller, who was sitting in Denver for Judge William A. Black, to allow him to withdraw the *alias capias* and to strike the trial date of September 2, 1958. It was so ordered by the court on July 24, 1958.

Later the District Attorney of Denver, before Gonzales was taken to federal prison, successfully petitioned the Hon. Neil P. Horan, one of the judges of the Denver District Court, for a writ of *habeas corpus ad prosequendum* by virtue of which Gonzales was retained in Denver and forced to appear in the custody of the Chief Deputy United States Marshal in the Denver District Court. On August 21, 1958, Gonzales filed his motion to quash the aforesaid writ.

At the hearing on September 3, 1958, the only witness

was the Chief Deputy United States Marshal for the District of Colorado who had the custody of Gonzales. After testimony by the Chief Deputy Marshal as to his authority to produce the prisoner the motion to quash was denied and the case set for trial on October 8, 1958, before Judge Black.

Gonzales questions the right of the Chief Deputy United States Marshal to produce him in our state court under the above writ and also urges that the state court could have no further jurisdiction over him because the *alias capias* had been stricken.

■ In our country, where there are two separate jurisdictions — federal and state — the rule which preserves the two systems of courts from conflict of jurisdiction, is that the court which first acquires jurisdiction of the subject matter of the litigation, whether it be person or property, must be permitted to exhaust its jurisdiction, to attain that for which it assumed control, before the other court may assert jurisdiction for its own purpose. The exception to this rule of comity is when one jurisdiction is authorized to, and does, give its consent to action by the other jurisdiction, while not relinquishing its own authority. This can be termed a waiver of exclusiveness.

■ In the instant case, in the absence of a statute, the only person authorized to consent on behalf of the United States for Gonzales to be brought before the state court is the Attorney General of the United States. *Ponzi v. Fessenden* (1922), 258 U.S. 254, 66 L. Ed. 607, followed in *People v. Berardi* (1928), 332 Ill. 295, 163 N.E. 668, 62 A.L.R. 274. This is an implied power inferred from his statutory functions. Gonzales claims this consent has not been given and without it the Denver District Court would be without jurisdiction over his person and would have no jurisdiction to proceed with the trial until such time as the consent is given or until he has served the term of his federal imprisonment and has been discharged by the federal authorities.

■ In *Ponzi,* supra, it was held that the comity of the United States in these cases may be exercised provided the enforcement of the federal court sentence is not prevented or the prisoner endangered. It is further stated that a person, who is serving a sentence of imprisonment imposed by a federal court for a federal offense, is not thereby rendered immune to prosecution in a state court for an offense committed against the state. We agree with that decision.

■ When the federal government produces a prisoner in our state courts by virtue of a writ of *habeas corpus ad prosequendum* issued by the district court and directed to the federal warden or marshal having him in charge, proper governmental consent is presumed. It is not a matter to be raised by the prisoner for the rule is not for his benefit. Only the federal government has the right to question the procedure used or assert lack of proper consent. It has not done so as to Gonzales.

The transcript furnished with respondent's answer shows that the Chief Deputy Marshal testified that the Attorney General of the United States has furnished under his signature written regulations governing the procedure to be followed in this type of case. The regulations, which were admitted in evidence over Gonzales' objection, instruct the marshal to contact the United States Attorney for the district concerned and if the latter "is satisfied that the production of the prisoner in the State Court will not interfere with any pending federal case or investigation, and will not in any other way be inconsistent with the interests of the federal government" he may authorize the marshal to execute the writ. It is this express delegation of power to the United States District Attorney which, in the absence of a contrary showing *by the federal government,* is presumed to have been properly exercised.

Gonzales also urges that the act of Judge Horan in granting the writ in effect reviewed and overruled Judge Miller in violation of C.R.S. '53, 37-4-18, because Judge

Miller had already dismissed the second *capias* upon the motion of the people. The statute reads:

"Powers of judges sitting separately. — While sitting separately, the courts held by the several judges, each of them shall be known as the district court of the county wherein and wherefor such court may be held, and shall have the same power to vacate or modify its own judgments, decrees or orders rendered or made while so held, as if the said court were composed of a single judge; provided, that neither of said judges shall have power to vacate or modify a judgment, decree or order rendered or made by another judge of the same court."

In view of the fact that the question may arise again, we feel impelled to comment thereon. *Capias* is a latin word meaning "thou mayest take." A *capias* is a writ commanding an officer to take the body of the person named therein; that is, to arrest him. A *capias ad respondendum* (which is the one used here) is one directing the arrest of the defendant and his production in court at a day certain. Webster's New International Dictionary, Second Edition, Unabridged, 1955.

Though the *alias capias* quashed by Judge Miller was voided, such act did not dismiss the information pending against Gonzales. The cited statute can have no application to a new *capias* for the state has the right to have as many capias issued as are necessary to accomplish its duty to try a defendant. This is not vacating or modifying " a judgment, decree or order rendered or made by another judge of the same court." An order dismissing a *capias* is not within the meaning of C.R.S. '53, 37-4-18.

The Rule is discharged.