No. 18,884.

Denver Electric and Neon Service Corp. *v.* Gerald H. Phipps, Inc.

(354 P. [2d] 618)

Decided August 8, 1960.

Mr. James M. Nelson, Mr. David Berger, for plaintiff in error.

Messrs. Hughes & Dorsey, Mr. Allan R. Phipps, Mr. George C. Gibson, for defendant in error.

*En Banc.*

Mr. Justice Doyle delivered the opinion of the Court.

The Denver Electric and Neon Service Corporation instituted this action in the district court of the City and County of Denver naming as defendants Gerald H. Phipps, Inc., the Boley Electric Company, the Union National Bank and The First National Bank of Denver. The trial court granted motions of The First National Bank to dismiss. Thereafter, in its amended complaint, the defendant First National Bank of Denver was not named. The motion to dismiss of Gerald H. Phipps, Inc.,

directed to the amended complaint was granted in a hearing before a different judge. The plaintiff electing to stand on this ruling seeks review of the judgment of dismissal in this Court.

The facts as disclosed by the complaint and the amended complaint show that Gerald H. Phipps, Inc., issued two checks payable to Denver Electric and drawn on The First National Bank of Denver. The first check was dated July 14, 1955, and was in the amount of $8,296.95. The second check was issued on August 8, 1955, and was in the amount of $6,679.94. It is alleged that these checks were negligently delivered by Phipps to the Boley Electric Company and that company endorsed and deposited the checks in its own account; that Union National Bank credited the Boley Electric Company account in the amounts of the checks and that The First National Bank paid these checks notwithstanding neither had been endorsed by the Denver Electric Company, the payee.

There is a total of 9 separate claims in the original complaint. In claims 1 and 2, the facts as summarized above are alleged and a demand is made against Boley Electric Company, Union National Bank and First National Bank of Denver for the proceeds of the two checks. Claims 3 and 4 describe negligence actions against Gerald H. Phipps, Inc., Union National Bank and First National Bank. These are predicated on the alleged negligence of the parties in, first, misdelivering the two checks and, secondly, paying them without the endorsement of the payee — plaintiff. The 5th and 6th claims pursue a conversion theory against Boley Electric Company, Union National Bank and First National Bank. In claims 7 and 8 an effort is made to impose a trust upon the proceeds of the two checks against Boley Electric Company. Claim 9 merely alleges an indebtedness based upon an account stated by Phipps for the total sum represented by the two checks.

The Honorable Joseph M. McDonald granted the mo-

tion of the First National Bank for dismissal and at the same time denied the like motion of Phipps. The amended complaint, the sufficiency of which is presented on this review, is substantially the same as the original complaint except that plaintiff apparently acceded to the dismissal of the First National Bank from the action by dropping it as party defendant. In any event, a new motion to dismiss addressed to the amended complaint was filed by Phipps. Hearing on this motion was before the Honorable H. Joe Rawlinson. At this hearing, the motion of Phipps, which attacked the 3rd, 4th and 9th claims, was granted.

In seeking a reversal of the judgment of dismissal as to Phipps, Denver Electric urges two points.

*First,* that the ruling of Judge McDonald denying Phipps' motion to dismiss addressed to the original complaint precluded Judge Rawlinson from entertaining the identical motion and arriving at a contrary conclusion.

*Secondly,* that (assuming that Judge Rawlinson was empowered to hear the motion to dismiss) the court erred in dismissing the 3rd, 4th and 9th claims because the allegations contained in these claims were valid and sufficient.

## I.

*Was it error for the trial court to entertain and grant the motion to dismiss claims 3, 4 and 9 with respect to which the same court, acting through another judge, had previously denied such motion?*

The issue here raised must be considered in the light of C.R.S. '53, 37-4-18. This section provides:

*"Powers of judges sitting separately.* — While sitting separately, the courts held by the several judges, each of them shall be known as the district court of the county wherein and wherefor such court may be held, and shall have the same power to vacate or modify its own judgments, decrees or orders rendered or made while so held, as if the said court were composed of a single judge; *provided, that neither of said judges shall*

*have power to vacate or modify a judgment, decree or order rendered or made by another judge of the same court."* (Emphasis supplied.)

Does the italicized proviso of the above section prevent renewal of a motion to dismiss in circumstances like the present ones? We think not. There is no exact governing precedent. In *Rice v. Van Why,* 49 Colo. 7, 111 Pac. 599 (decided without reference to the above statute), it was contended that a ruling by one judge of the district court sustaining a motion to strike allegations in the complaint was interlocutory and that another judge of the same court was empowered to reconsider the motion and deny it. In distinguishing between orders interlocutory and orders final in nature, the Court declared:

" * * * It will scarcely be denied that the court, at any time before trial and final judgment, had the power, if convinced of error, to correct the same as it might be advised. The ruling on the motion to strike was not of such a final or conclusive character as to preclude the action taken, even after the expiration of the term. It was the same court acting at all times, and as such it clearly had this power, and might properly exercise it. The fact that a different judge was sitting worked no limitation upon the power and authority of the court. We doubt if it will be questioned that the judge who made the original order had the right, if exercised in apt time, to change his mind and withdraw or modify it, if advised, as matter of law, that such action was due the plaintiff. If this be true, and it seems reasonable, it follows that another judge, presiding over the same court, having like power and authority, might also properly make a like order."

*Rice v. Van Why,* supra, was cited with approval in the recent case of *Epstein v. Denver,* 133 Colo. 104, 293 P. (2d) 308. Here the right of the trial judge to receive evidence at the trial which had been excluded at preliminary proceedings before the presiding judge of the

same court was upheld. Speaking through Mr. Justice Knauss, the Court disposed of the question by declaring:

" * * * Counsel for Respondents now urge that under C.R.S. '53, 37-4-18 Judge McWilliams, trial judge, was obligated to follow the ruling of the presiding judge on the admissibility of evidence as to the 1950 sale price of the subject property. The ruling of the presiding judge was a preliminary or interlocutory order only. It was not embodied in any pre-trial order entered in the case. It was a ruling and not 'a judgment, decree or order rendered or made by another judge of the same court,' which is prohibited by C.R.S. '53, 37-4-18. In making his ruling, the trial judge observed that the decision of this court in *Rice v. Van Why,* 49 Colo. 7, 'does not indicate whether the court was construing the section 108 [now C.R.S. '53, 37-4-18] * * * although the *ratio decidendi* in that regard would indicate that such might well have been the case. In any event this court accedes to the logic and reasoning of our Supreme Court in *Rice v. Van Why.*' "

■ Is a judge powerless to correct his own error by reconsidering the denial of a motion to dismiss? It makes no sense to hold that a palpable error can not be corrected and to require review proceedings for purposes of correction. This test would seem to be the sensible one and also that which is implicit in the quoted statute. It seems clear that a motion to dismiss which has been previously denied can be renewed before the *same* judge. There is no good reason for adopting a contrary view merely because the case is transferred to another judge. Cf. Rule 12 (h) Colorado Rules of Civil Procedure. *Lenich v. Lenich,* 138 Colo. 251, 331 P. (2d) 498; *Gonzales v. Horan,* 138 Colo. 275, 332 P. (2d) 205.

We conclude that the order *denying* the motion was modifiable and that Judge Rawlinson was empowered to entertain it.

II.

*Did the trial court err in granting the .Phipps motion*

*to dismiss claims 3, 4 and 9 of the amended complaint?*
Claim 3 deals with the check for $8,296.95 and claim 4 pertains to the $6,679.94 check. Both allege that the defendant Gerald H. Phipps, Inc., was negligent in delivering the checks to the defendants Robert E. Boley, Clyde W. Boley and the Boley Electric Company, and further allege that as a result of this negligence the plaintiff was damaged in the amount represented by the two checks and judgment was prayed in this amount. The 9th claim proceeds under the theory of indebtedness of Phipps to the plaintiff in the total amount of the two checks. Although the record is silent as to the reasons for the dismissal of these claims, it would appear from the arguments of counsel that the court acted on the authority of *U. S. Portland Cement Co. v. U. S. National Bank,* 61 Colo. 334, 157 Pac. 202. It was there held that the payee of a series of checks whose endorsement had been forged by a fraudulent agent could ratify the payment by the drawee bank and could maintain an action against the collecting bank, the U. S. National of Denver, on the theory that it had collected and misappropriated the proceeds of the checks and was thereby accountable to the plaintiff, payee, for the proceeds. In the course of that opinion the Court pointed out that by ratifying this payment the plaintiff, payee, released the drawer and drawee of the checks. It was there said:

"Under our former decisions, we agree that the payee of a check cannot sue the drawee until after acceptance. We might also concede, if necessary, that the payment of a check upon a forged indorsement is not sufficient to give the payee thereof a right of action to compel the drawee to pay it over again to him, for by so doing would be to allow the act which is expressly repudiated by the payee, so far as the payment is concerned, to be ratified by him as an acceptance of the check but not as a payment of it; but such is not the case here. To the contrary the plaintiff seeks, as we think he has the right to do, to ratify the collection of the check for him; in such

case he ratifies the assumed payment of it, and the check is then paid, the drawee bank and the maker thereof are both released from paying it over again; the payee would be estopped from making such claim. The ratification is not upon the acceptance alone of the check ·by the drawee bank, but upon its collection by the defendant in error bank and payment by the drawee bank; all of which are ratified by the payee and the suit is then against the collecting bank as for moneys had and received."

 Dismissal of the claims against First National Bank in the original complaint was probably based on the principle that the giving of a check does not assign present funds on deposit and does not create drawee liability to the payee unless and until it is accepted by the drawee, C.R.S. '53, 95-3-6. This rule was recognized in *U. S. Portland Cement v. U. S. National Bank,* supra. See also *Miller v. Northern Bank,* 239 Wis. 12, 300 N.W. 758, 137 A.L.R. 870. The probable reason for Judge Rawlinson's dismissal of the 3rd, 4th and 9th claims of the amended complaint against Phipps was the ratification and adoption theory as expounded in *U. S. Portland Cement v. U. S. National Bank,* supra. The rationale of the *U. S. Portland Cement* case is that a payee whose signature has been forged, or whose check has been cashed without endorsement as in the present case, can treat the entire transaction as a nullity (C.R.S. '53, 95-1-23) and may demand payment of the debt from the drawer of the check, his debtor. Since the check was never delivered to the payee and was not negotiated by him, it could not be legally binding and thus the debt owed by the drawer to the payee continues outstanding. The drawer can demand that the drawee credit his account and the drawee in turn can demand that the collecting bank reimburse it. See *American National Bank v. First National Bank,* 130 Colo. 557, 277 P. (2d) 951. The payee has another remedy. He can sue the collecting bank directly. The legal effect of his doing this con-

stitutes adoption and ratification of the collection and payment of the check (notwithstanding that it was not endorsed). (We consider the legal consequence of no endorsement to be the same as a forgery, at least for the present purpose. See *American National Bank v. First National Bank,* supra.)

Did Denver Electric adopt and ratify the collection and payment of the check within the meaning of the *U. S. Portland Cement* case? A reading of the amended complaint shows clearly that this was the course of action adopted by Denver Electric Company. Each of the claims proceeds on the theory that the check was accepted and the proceeds were misappropriated. Paragraphs 15, 16 and 17 of the 1st and 2nd claims illustrate this beyond any doubt. These paragraphs read:

"15. That the defendants, Robert E. Boley, and Clyde W. Boley, at all times pertinent herein, knew or should have known that the title to the check described in paragraph 6 above, and title to the monies represented by said check was in the plaintiff and any sums received by Clyde W. Boley, Robert E. Boley from or through the Boley Electric Company on or after July 14, 1955, were received from monies belonging to the plaintiff.

"16. That the defendants, Clyde W. Boley, Robert E. Boley and the Boley Electric Company, or any of them, still have in their possession monies represented by check referred to in paragraph 6, above, or property into which said monies have been converted.

"17. That the check referred to in paragraph 6, above, or the monies represented thereby, were received by the defendants, Robert E. Boley, Clyde W. Boley, the Boley Electric Company, and the Union National Bank, for the benefit of the plaintiff, and that said sum of $8,296.95, has been retained by said defendants."

It can be said, therefore, that plaintiff renounced any claim predicated on the continued existence of the debt or on the non-discharge of the checks. See *U. S. Portland Cement v. U. S. National Bank,* supra; *Britton, Bills*

*and Notes,* 687, 688, 689, and the cases there cited; *Brannan, Negotiable Instruments Law,* Sec. 23, pp. 332, 333 and the cases cited.

Does it follow that the plaintiff has also renounced a right to claim damages against Phipps, the drawer, on a theory of negligent misdelivery? No cases are cited by counsel and we have been unable to discover any authority which deals with this specific question. However, claims 3 and 4 proceed on the basis of ratification and adoption and to that extent are consistent. The claims allege a loss resulting from the alleged unauthorized payment to Boley Electric Company. It is conceivable that a theory such as that found in claims 3 and 4 could be set up as an *alternative* to the demands against Union National Bank and Boley Electric Company. For this reason we are not disposed to hold that the adoption and ratification of payment and collection of the checks necessarily precludes Denver Electric from setting up a demand alleging negligence. It is our conclusion, however, that the claims are insufficient in law at the present time for the reason that Denver Electric does not demonstrate that it is now damaged. Under the *U. S. Portland Cement* theory, Denver Electric has a right to recover from Union National Bank and Boley Electric, but until such time as it fails in this effort it is unable to demonstrate damage which is an essential requirement of a negligence claim. See *Prosser, Torts,* p. 165. Another weakness of the negligence claims is their failure to show a breach of duty of Gerald H. Phipps, Inc., to plaintiff. Phipps could not anticipate that the checks would be collected and paid without Denver Electric's endorsement, nor was it required to foresee the chain of events which followed issuance of the checks which were order instruments requiring for their validity the endorsement of the payee. Furthermore, Phipps should not be required to foresee that Denver Electric would abandon the obvious remedy of treating the checks as nullities and demanding repayment of the

debt rather than the selection of the more difficult remedy against the collecting bank and the recipients.

We conclude, therefore, that the order of dismissal of claims 3 and 4 was correct. The order should, however, be without prejudice to Denver Electric to refile these claims at some future time if it is able to allege actual damage.

Although claim 9 against Phipps alleges an indebtedness in the total amount of the checks "on an account stated," it cannot be construed as an assertion of a claim arising from the original debt and as a repudiation of the checks. It is essentially an action on the checks which recites "according to Exhibits A and B, copies of which are hereto attached and made a part hereof by reference." Thus it appears to demand relief on checks, collection, payment and discharge of which Denver Electric has adopted and ratified. Since the checks are in law discharged, the claim is insufficient. *U. S. Portland Cement v. U. S. National Bank,* supra. Consequently this 9th claim can not be construed as alternative to the other eight claims so as to require election rather than dismissal. It follows that the trial court was also correct in dismissing this claim.

The judgment of the trial court is ordered modified to the extent indicated above and as so modified is affirmed.

MR. JUSTICE KNAUSS and MR. JUSTICE HALL not participating.