PEOPLE of the State of Colorado, Petitioner,

v.

JUVENILE COURT, CITY AND COUNTY OF DENVER, and One of the Judges Thereof, Honorable David E. Ramirez, Respondents.

No. 95SA382.

Supreme Court of Colorado, En Banc.

Feb. 20, 1996.

A. William Ritter, Jr., District Attorney, Second Judicial District, Nathan B. Coats, Chief Appellate Deputy District Attorney, Denver, for Petitioner.

Kurt A. Metsger, Denver, for Juvenile Respondent.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Paul Farley, Deputy Attorney General, John August Lizza, First Assistant Attorney General, Thomas S. Parchman, Assistant Attorney General, State Services Section, Denver, for amicus curiae, Dept. of Human Services.

Justice MULLARKEY delivered the Opinion of the Court.

■ The Denver District Attorney brought this original proceeding pursuant to C.A.R. 21 against the juvenile court and Judge Ramirez of that court. The petition sought emergency relief in the nature of mandamus or prohibition because conflicting court orders had been issued by the juvenile court and the district court to the Denver Sheriff regarding the placement for custody of a juvenile. We issued a rule to show cause and now make that rule absolute. The juvenile court had no jurisdiction to order the placement of the juvenile in the custody of the Department of Human Services when the district court ordered that juvenile held in the county jail awaiting trial on charges filed against the juvenile as an adult.

I.

A brief chronology of the facts will put this case into perspective. In 1993, Steven Roybal, who was twelve years old, was charged as a juvenile with committing delinquent acts which, if committed by an adult, would constitute first degree criminal trespass in violation of section 18–4–502, 8B C.R.S. (1995 Supp.), and criminal mischief in violation of section 18–4–501, 8B C.R.S. (1995 Supp.). Roybal failed to appear and the case remained pending.

On October 9, 1995, Roybal was arrested in connection with the stabbing of two Denver police officers. Juvenile Judge Wakefield found that the then fourteen-year-old Roybal presented "an extreme danger" to the detention staff and others if he were placed in the juvenile detention facility. Pursuant to section 19–2–204(4)(a), 8B C.R.S. (1995 Supp.), the judge ordered Roybal to be held in the Denver County Jail. Four days later Roybal was charged as an adult in district court. § 19–2–805, 8B C.R.S. (1995 Supp.). The information alleged that Roybal had committed two counts of attempted murder, two counts of first degree assault and felony menacing. *See* §§ 18–2–101, 18–3–102, 18–3–202, and 18–3–206, 8B C.R.S. (1986 & 1995 Supp.). At Roybal's request the preliminary hearing was postponed from November 16, 1995, to December 28, 1995.

■ Before the preliminary hearing was held, however, Roybal appeared in juvenile court for sentencing on his plea of guilty to first degree criminal trespass. The court rejected the district attorney's request to postpone sentencing in the juvenile case until after the felony case was decided. It also denied a joint motion by the prosecution and defense to dismiss the juvenile case. Consequently, on November 20, 1995, Judge Ramirez adjudicated Roybal to be a delinquent and committed him to the custody of the Department of Human Services for an indefi-

nite term not to exceed two years. The judge ordered that Roybal be placed in a particular juvenile facility, Lookout Mountain Detention Center.[1]

The district attorney sought relief from the juvenile court's sentencing order from Judge Bayless of the Denver District Court, who was presiding over Roybal's felony case. Judge Bayless reaffirmed that court's order directing that Roybal be held in the county jail on the pending felony charges. In response, Judge Ramirez directed Roybal's immediate removal from the county jail to the juvenile facility.

We issued a rule to show cause to resolve this jurisdictional dispute between the juvenile court and the district court.

## II.

In a memorandum explaining his immediate removal order, Judge Ramirez relied on the constitutional status of the juvenile court of the city and county of Denver. While it is certainly true that the Denver Juvenile Court was established by Article VI, section 15 of the Colorado Constitution, that fact does not resolve the issue now before us. The district courts also were created by the constitution. Under Article VI, section 9, district courts are declared to be courts of general jurisdiction and, as relevant here, are given original jurisdiction in all criminal cases. In contrast, Article VI, section 15 grants the Denver Juvenile Court "such jurisdiction as shall be provided by law."

We construed the relationship of these two constitutional provisions in *Garcia v. District Court,* 157 Colo. 432, 403 P.2d 215 (1965). We held unconstitutional a statute which attempted to vest the Denver Juvenile Court with exclusive jurisdiction over cases in which a person under sixteen years of age

was charged with a crime punishable by death or life imprisonment. *Id.* at 437–39, 403 P.2d at 218–19. We found that the legislature could not "subtract from" the district court's exclusive jurisdiction over criminal matters although we acknowledged that the Denver Juvenile Court could be given exclusive jurisdiction over noncriminal matters such as delinquent, dependent or neglected children. *Id.* at 439–40, 403 P.2d at 219.

In the case now before us, the Denver Juvenile Court has no jurisdiction over the felony charges pending against Roybal in the district court.

## III.

Roybal advances two arguments in support of his position that he should be placed in a juvenile facility pending his trial on the felony charges. First, he contends that the relevant statute, section 19–2–204(3)(c)(II), 8B C.R.S. (1995 Supp.), which permits pretrial detention of a juvenile in an adult jail under certain circumstances, does not apply to juveniles in his situation. Second, he asserts that the sentence imposed by the juvenile court should be carried out before he can be placed in an adult facility as a pretrial detainee because the juvenile court was the first court to obtain jurisdiction over him. We reject both claims.

## A.

■ Generally, the Children's Code prohibits the confinement of a child in an adult detention facility such as a county jail. However, when the child has been charged as an adult with the commission of a felony, the relevant statute provides that the child may *not* be held in a juvenile facility unless both the prosecution and defense counsel agree. § 19–2–204(3)(c)(II), 8B C.R.S. (1995 Supp.).[2]

1. Although the issue is not presently before us, we note that the juvenile court had no statutory authority to assign Roybal to a specific placement. Rather, that authority rests with the Department of Human Services. *See* § 19–2–1103(1)(a), 8B C.R.S. (1995 Supp.) (the department examines and evaluates each juvenile committed to its care prior to institutional placement); § 19–2–703(1)(a), 8B C.R.S. (1995 Supp.) (vesting placement authority with the department); *see also McDonnell v. Juvenile Court,* 864

P.2d 565 (Colo.1993) (holding that the juvenile court lacked jurisdiction to preclude the Department of Institutions from placing a juvenile in a certain facility). Hence, the juvenile court acted in excess of its jurisdiction in assigning Roybal to the Lookout Mountain Detention Center.

2. Section 19–2–204(3)(c)(II), 8B C.R.S. (1995 Supp.), provides that:

Following a detention hearing held in accordance with subparagraph (I) of this paragraph

The statute requires that a juvenile detained in an adult facility be physically separated from adult inmates and protected from contact with adult offenders and persons charged with the commission of crimes. § 19–2–204(4)(b), 8B C.R.S. (1995 Supp.).

Roybal correctly points out that the statute does not expressly address the place of confinement of a juvenile like Roybal, who has been sentenced on a juvenile offense and is awaiting trial as an adult charged with the commission of a felony. Roybal suggests that he should be treated in a manner similar to an adult who has been convicted of an offense in one jurisdiction and charged with an offense in another jurisdiction. Roybal asserts that, under such circumstances, the adult would begin serving his sentence on the first conviction and be brought to court in the second jurisdiction when he is tried for that offense.

We agree with the district attorney that Roybal's proposed statutory construction would undermine the purposes of the juvenile justice system and would be inconsistent with the statute requiring detention in an adult facility of a juvenile who has been charged as an adult.

■ District courts have exclusive jurisdiction over criminal matters. In contrast, juvenile courts have only limited jurisdiction as delineated by the legislature. *See City and County of Denver v. District Court*, 675 P.2d 312, 314 (Colo.1984) ("Juvenile courts are creatures of statute, however, and their jurisdiction does not extend beyond that established by the General Assembly."). Among other things, the juvenile system is designed to protect juveniles from certain consequences of their actions. For example, basic identification information of the juvenile is not public information and, under certain circumstances, the juvenile's records are expunged. *See* § 19–2–902 (1995 Supp.). In addition, juvenile detention facilities, because they do not serve the same purpose as adult detention facilities, do not have the same security features as do adult detention facilities.

■ It is the legislature's prerogative to determine when the protections accorded to juveniles are to be removed. The protections typically accorded to juveniles are lost when the juvenile court orders the juvenile to be held for criminal proceedings as an adult pursuant to transfer or if the juvenile is held for criminal proceedings as an adult pursuant to a direct filing. *See* § 19–2–204(4)(a), 8B C.R.S. (1995 Supp.).[3] The legislature has enumerated the conditions under which a juvenile may be charged by a direct filing in section 19–2–805, 8B C.R.S. (1995 Supp.). Direct filings are permitted, for example, if the juvenile is over fourteen years of age and is alleged to have (1) committed a first class or second class felony, (2) committed a felony enumerated as a crime of violence, or (3) committed a felony described in Article 12 of the Colorado Revised Statutes. *See* § 19–2–805, 8B C.R.S. (1995 Supp.).

The ramifications of being treated as an adult include pre-trial detention in an adult facility. If the nature of the juvenile's actions warrant the security precautions afforded in an adult facility, detention of such an individual in a juvenile facility threatens the safety of the facility and the juveniles placed in that facility. Therefore, to permit Roybal to carry out his juvenile sentence in a juvenile facility while criminal charges are pending against him in the district court, pursuant to which he has been detained as a safety risk, would thwart the public policies underlying the juvenile system and the criminal justice system in general.

(c), no juvenile who is to be tried as an adult for criminal proceedings pursuant to a direct filing or transfer shall be held at any facility intended to be utilized by juvenile offenders, unless the district attorney and the defense counsel agree otherwise. If there is no agreement, detention of the juvenile shall be subject to the provisions of subsection (4) of this section.

**3.** Our recent decision in *J.D.C. v. District Court*, 910 P.2d 684 (Colo.1996), holding that the state cannot directly file a case in the district court if it has already filed an identical information in the juvenile division and a section 19–2–806, 8B C.R.S. (1995 Supp.), transfer hearing is pending, is not relevant here since Roybal was independently charged as an adult in the district court pursuant to section 19–2–805, 8B C.R.S. (1995 Supp.).

## B.

■ The fact that the Denver Juvenile Court was first in time to exercise jurisdiction over Roybal does not control the outcome of this case. Roybal argues that he should be treated the same as an individual who has been convicted of a felony charge and sentenced to the Department of Corrections in one jurisdiction and, at the same time, is subject to pending charges in another jurisdiction. Roybal cites *Gonzales v. Horan,* 138 Colo. 275, 332 P.2d 205 (1958), for the proposition that the court with initial jurisdiction must be permitted to exhaust its jurisdiction prior to a court of later jurisdiction. In *Gonzales,* we explained that under our dual federal and state jurisdictional system,

> the rule which preserves the two systems of courts from conflict of jurisdiction, is that the court which first acquires jurisdiction of the subject matter of the litigation, whether it be person or property, must be permitted to exhaust its jurisdiction, to attain that for which it assumed control, before the other court may assert jurisdiction for its own purpose.

*Id.* at 278, 332 P.2d at 206.

■ The *Gonzales* analysis is not applicable to the situation presently before us. Issues of concurrent or conflicting jurisdiction and comity are not raised between the juvenile courts and the district courts with respect to criminal matters. Therefore, it is irrelevant that the juvenile court had jurisdiction over Roybal before the district court. Roybal is currently facing *criminal* charges in the district court and, for that reason, the district court's detention order prevails over the exhaustion of the juvenile court's jurisdiction. This outcome is supported by the pertinent statutory provisions and accords with the purpose of pretrial detention. Moreover, any conflict that might exist between the juvenile courts and district courts with respect to criminal proceedings must be resolved in favor of the district court for the public policy reasons discussed above.

■ Roybal argues next that because the district court set bail at $500,000, Roybal ostensibly could have posted bond and have been released. That apparently was not the case here since Roybal has not been able to post bond. However, if Roybal had been released on bond, the juvenile court could have required Roybal to commence serving his juvenile sentence. In short, section 19–2–204(3)(c)(II), 8B C.R.S. (1995 Supp.), would no longer apply.

## IV.

For the foregoing reasons, we now make the rule to show cause absolute. We hold that the juvenile court cannot order the transfer of Roybal to a juvenile facility while he is incarcerated in the county jail and while criminal charges are pending against him in the district court. Accordingly, the detention order of the Denver Juvenile Court is disapproved and vacated.