1
 2026 CO 39 In Re The People of the State of Colorado, Plaintiff v. Issac James Lawrence, Defendant No. 26SA25Supreme Court of Colorado, En BancJune 1, 2026
          In this
 C.A.R. 21 proceeding, the defendant, who was charged as an
 adult for crimes committed when he was a minor and who was
 initially held in the custody of the Division of Youth
 Services ("DYS"), asserts that the district court
 unlawfully and unconstitutionally ordered that he be
 transferred from DYS custody to a county jail when he turned
 eighteen years old.
 
 
          The
 supreme court concludes that, under the plain and unambiguous
 language of section 19-2.5-305(4)(g), C.R.S. (2025), of the
 Children's Code, the defendant was properly transferred
 from DYS custody to the county jail when he turned eighteen.
 The court further concludes that the defendant's right to
 equal protection of the laws was not violated by the transfer
 because, contrary to his assertions, he was not similarly
 situated to another defendant who was allowed to remain in
 DYS custody.
 
 2
 
          Accordingly,
 the court discharges its order to show cause and remands this
 case to the district court for further proceedings consistent
 with this opinion.
 
 3
 
          
 Original Proceeding Pursuant to C.A.R. 21 La Plata County
 District Court Case No. 24CR372 Honorable Kim S. Shropshire,
 Judge
 
 
          
 Attorneys for Plaintiff: Sean P. Murray, District Attorney,
 Sixth Judicial District Richard F. Lee, Special Deputy
 District Attorney Durango, Colorado
 
 
          
 Attorneys for Defendant: Megan A. Ring, Public Defender
 Kellan Schmelz, Deputy Public Defender Mallory Taub, Deputy
 Public Defender Durango, Colorado
 
 4
 
          
 Attorneys for Respondent La Plata County District Court:
 Philip J. Weiser, Attorney General Lily E. Nierenberg, Senior
 Assistant Attorney General Denver, Colorado
 
 
          
 Attorneys for Amicus Curiae Colorado Department of Human
 Services: Philip J. Weiser, Attorney General Sarah Richelson,
 Second Assistant Attorney General Michele Mulhausen, Senior
 Assistant Attorney General Denver, Colorado
 
 
          
 JUSTICE GABRIEL delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD,
 JUSTICE SAMOUR, JUSTICE BERKENKOTTER, and JUSTICE BLANCO
 joined.
 
 5
 
          
 OPINION
 
 
          
 GABRIEL JUSTICE
 
 
          ¶1
 In this C.A.R. 21 proceeding, Issac James Lawrence, who was
 charged as an adult for crimes committed when he was a minor
 and who was initially held in the custody of the Division of
 Youth Services ("DYS"), asserts that the district
 court unlawfully and unconstitutionally ordered that he be
 transferred from DYS custody to a county jail when he turned
 eighteen years old.
 
 
          ¶2
 We now conclude that, under the plain and unambiguous
 language of section 19-2.5-305(4)(g), C.R.S. (2025), of the
 Children's Code, Lawrence was properly transferred from
 DYS custody to the county jail when he turned eighteen. We
 further conclude that Lawrence's right to equal
 protection of the laws was not violated by the transfer
 because, contrary to his assertions, he was not similarly
 situated to another defendant who was allowed to remain in
 DYS custody.
 
 
          ¶3
 Accordingly, we discharge our order to show cause, and we
 remand this case to the district court for further
 proceedings consistent with this opinion.
 
 
          I.
 Facts and Procedural History
 
 
          ¶4
 When Lawrence was a minor, he was arrested and charged by
 direct filing in district court with (1) first degree murder,
 (2) attempted first degree murder, (3) first degree assault,
 (4) second degree motor vehicle theft, (5) reckless driving,
 and (6) duty upon striking an unattended vehicle (i.e.,
 leaving the scene of an
 
 6
 
 accident). At the time of his arrest, Lawrence was not
 serving a sentence in any other juvenile case, and he had no
 other juvenile cases pending.
 
 
          ¶5
 Over one year later, and while his case was pending, Lawrence
 turned eighteen years old. On the evening of his eighteenth
 birthday, deputies from the La Plata County Sheriff's
 Office transported him from the DYS facility in which he was
 being held to the La Plata County Jail. The following day,
 Lawrence filed an objection to that confinement, asserting
 that his transfer was done without a motion having been filed
 by the People or an order entered by the district court.
 According to Lawrence, he had been thriving in the DYS
 facility but was now facing an environment in the county jail
 that was dramatically different and would cause him to suffer
 potential harm that was real and significant.
 
 
          ¶6
 Lawrence further argued that the district court had
 discretion under section 19-2.5-305(4)(g) to keep him in DYS
 custody despite the statutory language providing, in
 pertinent part, that an adult who is being detained for a
 crime over which the juvenile court has jurisdiction or for
 whom charges are pending in district court pursuant to a
 direct filing or transfer "must be detained in the
 county jail." According to Lawrence, (1) section
 19-2.5-1118(1), C.R.S. (2025), allows for commitment to DYS
 until the age of twenty-one; (2) section 19-2.5-101, C.R.S.
 (2025), emphasizes liberal construction of the Children's
 Code to protect the best
 
 7
 
 interests of a child; and (3) section 19-2.5-801(4)(a),
 C.R.S. (2025), allows a juvenile charged as an adult to seek
 transfer of the case to the juvenile court.
 
 
          ¶7
 Lastly, Lawrence contended that his placement in the county
 jail violates his right to equal protection because he is now
 subject to harsher conditions of confinement than a similarly
 situated defendant who was serving a sentence for unrelated
 acts in a juvenile case when he was charged by direct file in
 district court with other crimes but who was not transferred
 to the county jail when he turned eighteen. According to
 Lawrence, because he, unlike the other defendant, did not
 have a prior juvenile record unrelated to the current
 charges, he should not have been treated more harshly than
 the other defendant, who was permitted to remain in DYS
 custody.
 
 
          ¶8
 The following day, the People filed a motion to transfer
 Lawrence to the La Plata County Jail, arguing that section
 19-2.5-305(4)(g) mandates that he be so transferred and
 affords a district court no discretion to order otherwise.
 The People further contended that the transfer did not
 violate equal protection principles.
 
 
          ¶9
 The district court conducted a hearing on the People's
 motion and then granted that motion. In the court's view,
 section 19-2.5-305(4)(g) mandated Lawrence's transfer and
 provided no grounds to allow the court to rule differently.
 The court thus ordered that Lawrence be transferred to the
 county jail as the
 
 8
 
 statute requires. The court, however, expressed discomfort
 with this result, noting that it wished it could come to a
 different conclusion and that it would welcome a different
 opinion from a higher court on this issue.
 
 
          ¶10
 Lawrence then sought relief in this court pursuant to C.A.R.
 21, and we issued an order to show cause.
 
 
          II.
 Analysis
 
 
          ¶11
 We begin by discussing our jurisdiction under C.A.R. 21 and
 the applicable standard of review and principles of statutory
 construction. Next, we address the pertinent statutes and
 Lawrence's claims thereunder. Finally, we consider
 Lawrence's equal protection argument.
 
 
          A.
 Original Jurisdiction
 
 
          ¶12
 The exercise of our original jurisdiction under C.A.R. 21 is
 a matter within our sole discretion. People v.
 Tafoya, 2019 CO 13, ¶ 13, 434 P.3d 1193, 1195. An
 original proceeding under C.A.R. 21 is an extraordinary
 remedy that is limited in its purpose and availability.
 Id. We have exercised our jurisdiction under C.A.R.
 21 to address a district court's abuse of discretion or
 ruling in excess of its jurisdiction when no other adequate
 appellate remedy exists. People v. Jones, 2015 CO
 20, ¶ 6, 346 P.3d 44, 46. We have also exercised our
 discretion under C.A.R. 21 to hear matters that present
 issues of significant public importance that we have not
 previously considered. Tafoya, ¶ 13, 434 P.3d
 at 1195.
 
 9
 
          ¶13
 Here, the district court's order raises a question as to
 what, if any, discretion courts have in applying section
 19-2.5-305(4)(g). This is a substantial question because, as
 Lawrence has argued, other provisions of the Children's
 Code reflect a legislative intent to give courts some leeway
 in dealing with juvenile offenders, thus tending to undermine
 a rigid reading of section 19-2.5-305(4)(g). In addition, the
 question presented raises an issue that we have not
 previously addressed and is of significant public importance
 considering its constitutional implications and application
 to juveniles turning eighteen years old across the state.
 Indeed, as noted above, although the district court ruled
 against Lawrence on the issue presented, the court expressed
 discomfort with the result that it reached and invited a
 higher court's opinion on this subject.
 
 
          ¶14
 Accordingly, we deem it appropriate to exercise our
 discretion under C.A.R. 21 to consider this matter.
 
 
          B.
 Standard of Review and Principles of Statutory
 Construction
 
 
          ¶15
 We review questions of statutory interpretation de novo.
 People in Int. of B.C.B., 2025 CO 28, ¶ 24, 569
 P.3d 74, 79. When interpreting a statute, we seek to discern
 and effectuate the legislature's intent. Id. In
 doing this, we apply words and phrases in accordance with
 their plain and ordinary meanings, and we consider the entire
 statutory scheme in order to give consistent, harmonious, and
 sensible effect to all of its parts. Id. Moreover,
 we must avoid interpretations that
 
 10
 
 would render any statutory words or phrases superfluous or
 that would lead to illogical or absurd results. Id.
 
 
          ¶16
 In interpreting a statute, we respect the legislature's
 choice of language. Id. at ¶ 25, 569 P.3d at
 79. Accordingly, we may not add words to a statute or
 subtract words from it. Id.
 
 
          ¶17
 If the statutory language is unambiguous, then we will apply
 it as written and need not resort to other rules of statutory
 construction. Id. at ¶ 26, 569 P.3d at 79.
 
 
          C.
 Section 19-2.5-305(4)(g)
 
 
          ¶18
 Section 19-2.5-305(4)(g) provides:
 
 
 A person who is eighteen years of age or older who is being
 detained for a delinquent act or criminal charge over which
 the juvenile court has jurisdiction, or for which charges are
 pending in district court pursuant to a direct filing or
 transfer if the person has not already been transferred to
 the county jail pursuant to subsection (3)(c)(IV) of this
 section, must be detained in the county jail in the same
 manner as if such person is charged as an adult.
 
 
          ¶19
 Here, when Lawrence turned eighteen, he indisputably was a
 person who was eighteen years of age or older and was being
 detained on charges pending in the district court pursuant to
 a direct filing. Accordingly, under the statute's plain
 language, he "must be detained in the county
 jail" in the same manner as if he had been charged as an
 adult. Id. (emphasis added). "Must" means,
 in pertinent part, "is required by law, custom, or moral
 conscience to." Must, Webster's Third New
 
 11
 
 International Dictionary (2002). Accordingly, as the district
 court found, the statute afforded it no discretion, and
 Lawrence was required to be detained in the county jail.
 
 
          ¶20
 We are not persuaded otherwise by the contrary arguments that
 Lawrence has presented in his petition to us.
 
 
          ¶21
 First, Lawrence asserts that the legislature intended that
 the Children's Code, of which section 19-2.5-305(4)(g) is
 a part, be "liberally construed to serve the welfare of
 children and the best interests of society." §
 19-1-102(2), C.R.S. (2025). Although the legislative
 declaration to the Children's Code does express such an
 intent, that general expression of legislative purpose does
 not allow us to disregard the mandatory language that the
 legislature employed when it enacted section
 19-2.5-305(4)(g).
 
 
          ¶22
 Second, Lawrence contends that because the Children's
 Code contains multiple provisions reflecting the
 legislature's recognition that young adults do not
 suddenly become fully assimilated into the adult criminal
 justice system at eighteen years of age, he should be
 returned to DYS custody. Again, however, we may not disregard
 section 19-2.5-305(4)(g)'s plain and unambiguous language
 in favor of general principles found elsewhere in the
 Children's Code.
 
 
          ¶23
 Third, Lawrence asserts that section 19-2.5-1117(1)(a),
 C.R.S. (2025), and section 19-2.5-1118(1) authorize courts to
 continue DYS custody of young adults
 
 12
 
 beyond age eighteen. Section 19-2.5-1117(1)(a) provides, in
 pertinent part, that a court "may commit a juvenile to
 the department of human services for a determinate period of
 up to two years if the juvenile is adjudicated for an offense
 that would constitute a felony or a misdemeanor if committed
 by an adult." Section 19-2.5-1118(1), in turn, states,
 in pertinent part, that a court "may commit a person
 eighteen years of age or older but less than twenty-one years
 of age to the department of human services if the person is
 adjudicated a juvenile delinquent for an act committed prior
 to the person's eighteenth birthday or upon revocation of
 probation." In the instant case, however, Lawrence has
 not been adjudicated a juvenile delinquent. Indeed, because
 charges were direct filed against him in the district court,
 he has never faced charges in the juvenile court.
 Accordingly, by their very terms, neither section
 19-2.5-1117(1)(a) nor section 19-2.5-1118(1) applies in this
 case.
 
 
          ¶24
 Fourth, Lawrence argues that section 19-2.5-103(6), C.R.S.
 (2025), preserves jurisdiction in juvenile court over young
 persons past eighteen years of age. That section provides:
 
 
 The juvenile court may retain jurisdiction over a juvenile
 until all orders have been fully complied with by such
 person, or any pending cases have been completed, or the
 statute of limitations applicable to any offense that may be
 charged has run, regardless of whether such person has
 attained the age of eighteen years, and regardless of the age
 of such person.
 
 
 Id.
 
 13
 
          ¶25
 Again, however, Lawrence was never subject to the
 jurisdiction of the juvenile court in this case because the
 charges were direct filed against him in district court.
 Specifically, article VI, section 9 of the Colorado
 Constitution declares district courts to be courts of general
 jurisdiction. People v. Juv. Ct., 915 P.2d 1274,
 1276 (Colo. 1996). As such, district courts generally have
 authority over criminal and juvenile matters. Flakes v.
 People, 153 P.3d 427, 436 (Colo. 2007). In contrast,
 juvenile courts have only limited jurisdiction as established
 by the legislature. Juv. Ct., 915 P.2d at 1277.
 Accordingly, a juvenile court has no jurisdiction to order a
 juvenile to be placed in the custody of the Department of
 Human Services when a district court orders that the juvenile
 be held in the county jail pending trial on charges filed
 against the juvenile as an adult. Id. at 1275;
 see also People v. Sandoval, 2016 COA 57, ¶ 53,
 383 P.3d 92, 102 ("Because direct file cases charge
 crimes, as opposed to delinquent acts, the enumerated crimes
 constitute a class or type of criminal cases and thus fall
 within the district courts' subject matter
 jurisdiction."). As a result, the district court is the
 only court that has had jurisdiction over the charges at
 issue, and section 19-2.5-103(6), which addresses when a
 juvenile court may retain jurisdiction over a
 juvenile, does not apply.
 
 
          ¶26
 Finally, Lawrence argues that section 19-2.5-801(4) allows a
 juvenile charged as an adult to seek to transfer the case to
 juvenile court. As Lawrence contends,
 
 14
 
 section 19-2.5-801(4)(a) provides, in pertinent part,
 "After a juvenile case has been charged by direct filing
 of information or by an indictment in district court, the
 juvenile may file in district court a motion to transfer the
 case to juvenile court." Upon the filing of such a
 motion, the district court then determines whether to
 transfer the case to juvenile court, based on the factors set
 forth in section 19-2.5-801(4)(b). The question of this type
 of reverse transfer, however, is not before us. Nor has
 Lawrence explained why the potential availability of a
 reverse transfer petition should inform our interpretation of
 section 19-2.5-305(4)(g).
 
 
          ¶27
 For these reasons, we conclude that, under section
 19-2.5-305(4)(g)'s plain and unambiguous language,
 Lawrence was properly transferred to the county jail when he
 turned eighteen years old. Any arguments as to the perceived
 harshness of the result of applying the statute's express
 language are better made to our General Assembly.
 
 
          D.
 Equal Protection Challenge
 
 
          ¶28
 Lawrence next contends that the district court violated his
 right to equal protection by treating him differently from an
 allegedly similarly situated criminal defendant named Hevon
 Martinez. Assuming without deciding that Lawrence properly
 preserved this issue, we are not persuaded.
 
 
          ¶29
 The Equal Protection Clause of the Fourteenth Amendment
 provides that no state shall "deny to any person within
 its jurisdiction the equal protection of
 
 15
 
 the laws." U.S. Const. amend. XIV, § 1. Although
 the Colorado Constitution does not contain an equal
 protection clause, we have construed our constitution's
 due process clause, Colo. Const. art. II, § 25, to imply
 a similar guarantee. Dean v. People, 2016 CO 14,
 ¶ 11, 366 P.3d 593, 596. "Equal protection of the
 laws assures the like treatment of all persons who are
 similarly situated." Id.
 
 
          ¶30
 When a party raises an equal protection challenge regarding a
 statute, the level of judicial scrutiny varies according to
 the type of classification used and the nature of the right
 affected. People v. Diaz, 2015 CO 28, ¶ 25, 347
 P.3d 621, 626-27. When, as here, the challenged law does not
 impact a traditionally suspect class or implicate a
 fundamental right, we apply rational basis review.
 Dean, ¶ 12, 366 P.3d at 597. Under this
 standard, the party challenging a statute's
 constitutionality "must prove beyond a reasonable doubt
 that the classification bears no rational relationship to a
 legitimate legislative purpose or government objective, or
 that the classification is unreasonable, arbitrary, or
 capricious." Diaz, ¶ 25, 347 P.3d at 627.
 Simply because a statutory classification creates a harsh
 result in one instance, however, does not mean that the
 statute fails to satisfy the rational basis standard.
 Id.
 
 
          ¶31
 In light of the foregoing principles, the threshold question
 in the equal protection challenge before us is whether the
 classes allegedly created by the statute at issue are
 similarly situated. See People v. Young, 859 P.2d
 814, 816 (Colo. 1993).
 
 16
 
 To establish an equal protection violation, "the
 classification must 'arbitrarily single out a group of
 persons for disparate treatment,' without singling out
 others who are similarly situated." People v.
 Hernandez, 2021 CO 45, ¶ 38, 488 P.3d 1055, 1064
 (quoting Indus. Claim Appeals Off. v. Romero, 912
 P.2d 62, 66 (Colo. 1996)). An equal protection challenge will
 generally fail if persons alleging disparate treatment are
 not similarly situated. People v. Black, 915 P.2d
 1257, 1260 (Colo. 1996).
 
 
          ¶32
 Here, notwithstanding Lawrence's assertion to the
 contrary, he and Martinez were not similarly situated.
 
 
          ¶33
 When Martinez was seventeen years old, he was adjudicated
 delinquent in a juvenile proceeding in Montezuma County, No.
 24JD54. Five days later, he was charged by direct file with
 first degree murder in Archuleta County District Court, No.
 24CR103. And a few weeks after that, he was committed to a
 DYS facility for eighteen months in his juvenile case.
 
 
          ¶34
 Approximately one month after his DYS commitment, Martinez
 was charged in another direct file case in Archuleta County
 District Court, No. 25CR16, with second degree assault
 causing serious bodily injury. Martinez thereafter turned
 eighteen, and the People filed a motion to transfer him to
 county jail.
 
 
          ¶35
 The district court, however, denied that motion. The court
 began its analysis by noting that section 19-2.5-305(4)(g)
 did not address a scenario like that before
 
 17
 
 it, where a defendant who had been sentenced on a juvenile
 offense was simultaneously awaiting trial as an adult for a
 charged felony. After noting what it perceived to be a dearth
 of applicable case law in this area, the court relied on (1)
 section 19-2.5-1118(1), which allows a person adjudicated a
 juvenile delinquent to be committed to the DYS until the age
 of twenty-one; (2) the General Assembly's intent, as
 stated in section 19-2.5-101(1)(a), to protect, restore, and
 improve public safety through a system of juvenile justice;
 and (3) the purposes of the Children's Code to determine
 that it had discretion to permit Martinez to remain in DYS
 custody. Then exercising that discretion, the court concluded
 that because (1) there was no indication that Martinez posed
 a risk to the safety of others; (2) his DYS sentence was for
 eighteen months; and (3) there was an unresolved reverse
 transfer motion pending before it, it was not in
 Martinez's best interest for him to be transferred to the
 county jail merely because he had turned eighteen.
 
 
          ¶36
 Without opining on whether the district court correctly
 applied the law in Martinez's case, we note that that
 case is distinguishable from the case before us. As noted
 above, Martinez was serving a juvenile sentence in DYS
 custody at the time he turned eighteen and the People moved
 to transfer him to the county jail based on a separate
 direct-filed case. In contrast, Lawrence was not serving a
 separate juvenile sentence when he turned eighteen and was
 transferred to the county jail. As a result, section
 19-2.5-1118(1), which arguably applied in
 
 18
 
 Martinez's case, does not apply here, and the two men
 were not similarly situated for purposes of establishing an
 equal protection violation.
 
 
          ¶37
 Accordingly, Lawrence's equal protection challenge fails
 at its initial step.
 
 
          III.
 Conclusion
 
 
          ¶38
 For these reasons, we conclude that, under the plain and
 unambiguous language of section 19-2.5-305(4)(g), Lawrence
 was properly transferred from DYS custody to the county jail
 when he turned eighteen years old. We further conclude that
 Lawrence's right to equal protection was not violated by
 the transfer because, contrary to his assertions, he was not
 similarly situated to another defendant who was allowed to
 remain in DYS custody.
 
 
          ¶39
 Accordingly, we discharge our order to show cause, and we
 remand this case to the district court for further
 proceedings consistent with this opinion.